CULLEN, Ch. J., EDWARD T. BARTLETT, WERNER, WILLARD BARTLETT and CHASE, JJ., concur ; GRAY, J., absent.

Judgment of conviction affirmed.

---

ROBERT S. ROBB, Appellant, *v.* WASHINGTON AND JEFFERSON COLLEGE et al., Respondents.

1. DECEDENT'S ESTATE — RESTRICTION OF AMOUNT THAT MAY BE DEVISED TO CHARITABLE CORPORATION. The advantage of the prohibition contained in chapter 360 of the Laws of 1860, to the effect that "no person having a husband, wife, child or parent" shall devise or bequeath more than one-half of his or her estate to any charitable, etc., corporation is not confined to the relatives mentioned in the statute, but its provisions may be insisted upon by any person who derives a benefit therefrom.

2. TRUST — SUFFICIENCY OF DECLARATION OF — DELIVERY OF PROPERTY UNNECESSARY. The execution of a declaration of trust of personal property, under seal, by the founder thereof, and its delivery to one of the *cestuis que trustent* is sufficient to create a trust of said property if the terms thereof are not illegal, a delivery of the property itself being unnecessary.

3. WHEN DECLARATION OF TRUST NOT TESTAMENTARY IN CHARACTER. The fact that such a declaration or deed of trust constitutes two separate, consecutive trusts, one during the life of the founder, the other not to take effect in possession or enjoyment until after his decease, does not render the second trust testamentary in its character, necessitating execution in compliance with the statutory requirements for the execution of wills; since, under the declaration, the rights of the beneficiaries accrued at the time of its execution and delivery, and except as the instrument itself contained a power of revocation in whole or in part, which reservation did not render the instrument testamentary, could not be modified by the subsequent acts of the founder of the trust.

4. WHEN DECLARATION OF TRUST NOT IN FRAUD OF STATUTE RESTRICTING TESTAMENTARY DONATIONS TO CHARITABLE CORPORATIONS. A contention that the creation of the trust was a fraud on the provisions of the act of 1860 (Ch. 360) cannot be sustained since such act regulates and restricts testamentary donations and no others. It was, therefore, entirely within the power and right of the settlor to give to one of the *cestuis que trustent*, by deed of trust, such part of his estate as he saw fit, and even though this was done in view of the statutory restrictions on

donations by will, his act contravened neither the letter nor the spirit of the statute.

5. VALIDITY OF DECLARATION OF TRUST — SUSPENSION OF ABSOLUTE OWNERSHIP OF PROPERTY. A declaration or deed of trust whereby the settlor appropriated and set aside certain securities in his possession for the purpose of paying out of the income arising therefrom a certain sum yearly to a college named therein which was located in a foreign state, the balance of the income to be applied to his own use during his life and appointing, after his decease, the said college as trustee in his stead, with power to take and hold the securities in trust to pay out of the principal certain legacies and out of the income arising from the remainder a certain sum annually to each of seven annuitants, the balance of the income arising therefrom during the lives of said annuitants, and after the death of the survivor of them, all thereof, to be devoted by the college to the maintenance of a certain professorship, constitutes two independent trusts, successive and not concurrent, the first during the life of the settlor, valid, and, as its provisions are readily severable from the subsequent trust, it should be upheld regardless of the fact that the second, which must be construed as a trust to pay annuities, is invalid under the laws of this state because it suspends the absolute ownership of the property for more than two lives in being; and a contention that since the ultimate trust is for charity, which may be made in perpetuity, the trust during the lives of the annuitants cannot add to the inalienability of the fund· is untenable.

6. WHEN TRUST INVALID IN THIS STATE UPHELD WHERE DESIGNATED TRUSTEE IS FOREIGN CORPORATION. The second part of the trust, however, is not controlled by the laws of this state, since the designated trustee is a corporation created by and located in another state and the fund is to be there held and the trust to be there administered; and if the trust, though invalid by our law, is legal under the laws of the foreign state, the fund should be there transmitted and the trust upheld; but, in the absence of evidence as to the law of the foreign state on the subject in question, the validity or invalidity of the trust in that state should first be the subject of proof.

*Robb* v. *Washington & Jefferson College,* 103 App. Div. 327, modified.

(Argued June 6, 1906; decided June 21, 1906.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered June 5, 1905, upon an order reversing a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term and directing a dismissal of the complaint.

On July 23, 1902, John H. Wallace made his last will by which he bequeathed to his wife the sum of $10,000 in

pursuance of an ante-nuptial agreement between the parties, to certain other legatees sums outright aggregating $32,000, provided for annuities to seven persons during their respective lives and gave the remainder of his estate to Washington and Jefferson College, located at Washington, in the state of Pennsylvania. After consultation with the authorities of the college respecting the application of his bounty Mr. Wallace, on September 5th, executed and delivered to the college a declaration of trust the material parts of which, after a recital of his desire to irrevocably appropriate and settle certain securities on the college for the establishment and maintenance of a professorship of rhetoric and oratory, are as follows :

"Now, Therefore, I, John H. Wallace, do hereby declare that I have this day irrevocably appropriated and set aside securities of the value of One hundred and twenty-nine thousand dollars, or more, said securities being now in my possession and being hereinafter more particularly enumerated, and that I hold the same in trust and special confidence for the following uses and purposes and none other, to wit :

"*First.* To pay over upon the First day of October in each and every year during my natural life to said Washington and Jefferson College, upon the receipts of its treasurer, out of the net income arising from said securities, the sum of eighteen hundred dollars to be applied to the maintenance of said professorship.

" *Second.* To take and apply to my own individual use, during the term of my natural life, all the residue of the net annual income of said securities.

"*Third.* From and immediately after my decease I hereby constitute and appoint the said Washington and Jefferson College trustee in my room and stead and direct and empower said College to immediately take and hold said securities as I now hold them in trust to presently pay out of the principal of the same as follows : "

Here follow gifts to the legatees named in his will.

" * * * After Thirty-two thousand dollars have been paid by Washington and Jefferson College, my successor

in this trust, out of the principal sum of the securities therein embraced, and hereinafter enumerated, the remaining securities shall be held by said college in trust to pay out of the net income annually, counting from the date of my death, the following sums, to wit: " (The same annuitants mentioned in his will.)

" The balance of the net income of said remaining securities during the lives of said annuitants (and after the death of the survivor of them) all the net income thereof shall be devoted by the said Washington and Jefferson College to perpetually maintain a professorship in Rhetoric and Oratory to be called the Wallace Professorship of Rhetoric and Oratory."

The declaration contains an enumeration of the particular securities the subject of the trust, which amount in the aggregate to about $130,000. The settlor reserved to himself the right to modify the provision as to the legacies and annuities provided he should not thereby increase their aggregate amount. Having executed this declaration, Mr. Wallace thereupon made a codicil to his will by which he revoked all the legacies and annuities except that to his wife and the residuary gift to the college. Mr. Wallace died in May, 1903, leaving an estate not exceeding ten thousand dollars in addition to the securities mentioned in the declaration of trust. The plaintiff brought this action as one of the next of kin of the deceased to have the trust deed declared inoperative, the securities therein mentioned adjudged part of the testator's estate, and that so much of the legacy to the college as exceeded in value one-half of the testator's estate be distributed among his next of kin as in the case of intestacy. The case was decided by the Trial Term in favor of the plaintiff. The Appellate Division reversed the judgment of the Trial Term and awarded the defendant final judgment dismissing the complaint, with costs.

*Henry W. Goodrich* for appellant. There was no contract in parol, but the agreement between the parties is contained in the written instruments. (*Gilman* v. *McArdle*, 99 N. Y.

451.) The declaration of trust was void because it violated section 2 of article 1 of the Personal Property Law. ( *Underwood* v. *Curtis*, 127 N. Y. 523; *Cochrane* v. *Schell*, 140 N. Y. 516; *Hooker* v. *Hooker*, 41 App. Div. 235; *Herzog* v. *T. G. & T. Co.*, 177 N. Y. 86; *Rothschild* v. *Roux*, 78 App. Div. 282; *Allen* v. *Stevens*, 161 N. Y. 122; *Buchanan* v. *Little*, 154 N. Y. 157; *Hooker* v. *Hooker*, 41 App. Div. 235.) The validity of the declaration of trust is to be determined by the law of the state of New York. ( *Wood* v. *Wood*, 5 Paige, 596; *Levy* v. *Levy*, 33 N. Y. 97; *Knox* v. *Jones*, 47 N. Y. 389; *Cross* v. *U. S. T. Co.*, 131 N. Y. 330; *Hope* v. *Brewer*, 136 N. Y. 126; *Van Horne* v. *Campbell*, 100 N. Y. 287.) The residuary bequest in the will, which is unrevoked by the codicil, is invalid in so far as it operates to vest more than one-half of Wallace's estate in the college "in trust or otherwise." (L. 1860, ch. 360; *Chamberlain* v. *Chamberlain*, 43 N. Y. 424; *Amherst College* v. *Ritch*, 151 N. Y. 282.) The declaration of trust must stand or fall as a whole. (Chaplin on Express Trusts, 626; *Holmes* v. *Mead*, 52 N. Y. 332; *Matter of Butterfield*, 133 N. Y. 473; *Benedict* v. *Webb*, 98 N. Y. 460.)

*M. Linn Bruce* for Washington and Jefferson College et al., respondents. The plaintiff not being within the protection of chapter 360 of the Laws of 1860 cannot maintain this action. (*Allen* v. *Stevens*, 161 N. Y. 149; *Woodward* v. *James*, 115 N. Y. 354; *Amherst College* v. *Ritch*, 151 N. Y. 282.) The title to the corpus of the securities passed to the college during the lifetime of John II. Wallace by virtue of a contract resting in parol stated in the declaration of trust and fully executed, and upon his death the college was entitled to their possession. ( *White* v. *Baxter*, 71 N. Y. 254; *Miller* v. *McKenzie*, 95 N. Y. 575.) A present irrevocable title to the securities in question was vested in the college by the declaration of trust. (2 Pom. Eq. Juris. § 997; *Lock* v. *F. L. & T. Co.*, 140 N. Y. 141; *Smith's Estate*, 114 Penn. St. 429; *Dickerson's Appeal*, 115 Penn. St. 198; *Martin* v.

*Funk*, 75 N. Y. 134; *Hickok* v. *Bunting*, 67 App. Div. 560; *Hirsh* v. *Auer*, 146 N. Y. 13; *Day* v. *Roth*, 18 N. Y. 448; *Young* v. *Young*, 80 N. Y. 422, 431; *Gilman* v. *Reddington*, 24 N. Y. 18; *Gilman* v. *McArdle*, 99 N. Y. 451; *Barry* v. *Lambert*, 98 N. Y. 306.) Washington and Jefferson College is a corporation organized and existing under the laws of the state of Pennsylvania. The property is personal property. The trust is to be executed in the state of Pennsylvania; therefore, the validity of the declaration of trust is to be determined by the laws of that state. (*Hope* v. *Brewer*, 136 N. Y. 138; *Dammert* v. *Osborn*, 140 N. Y. 40; *McKeown* v. *Officer*, 25 N. Y. S. R. 319; *Congregational Union Society* v. *Hale*, 29 N. Y. 396; *Despard* v. *Churchill*, 53 N. Y. 192; *Chamberlain* v. *Chamberlain*, 43 N. Y. 432.) John H. Wallace could be trustee and at the same time have a beneficial interest in the trust. (Chaplin on Suspension of Power of Alienation, 167; *Woodward* v. *James*, 115 N. Y. 357; *Matter of James*, 146 N. Y. 98; *Losey* v. *Stanley*, 147 N. Y. 568; *Rankine* v. *Metzger*, 69 App. Div. 264; *Greene* v. *Greene*, 125 N. Y. 506.)

*John L. Hill* for W. N. Wallace et al., respondents. The so-called "declaration of trust" attests much more than a mere unilateral trust. It attests a valid contract of purchase of the securities, supported by valid consideration, between parties competent to contract. (*White* v. *Baxter*, 71 N. Y. 254; *Roberts* v. *Cobb*, 31 Hun, 150; 103 N. Y. 600; *Miller* v. *McKenzie*, 95 N. Y. 575; *Andrews* v. *D. B. Co.*, 132 N. Y. 352; *Day* v. *Roth*, 18 N. Y. 453; *Wetmore* v. *Parker*, 52 N. Y. 458; *Bird* v. *Merklee*, 144 N. Y. 550; *Holland* v. *Alcock*, 108 N. Y. 337; *Williams* v. *Williams*, 8 N. Y. 530; *Frazier* v. *Houget*, 65 App. Div. 200; *T. B. Church* v. *F. A. Church*, 60 App. Div. 335.) There is no element of testamentary nature about the transaction. (*Amherst College* v. *Ritch*, 151 N. Y. 233; *Chamberlain* v. *Chamberlain*, 43 N. Y. 424.) The college became the legal owner and not a mere trustee of the securities at the death of Wallace subject

to the specified duty of payment of principal sums, so-called annuities out of income, and the application of net income to the professorship. (*Wetmore* v. *Parker*, 52 N. Y. 458; *Bird* v. *Merklee*, 144 N. Y. 550; *Holland* v. *Alcock*, 108 N. Y. 337; *Williams* v. *Williams*, 8 N. Y. 530; *Frazier* v. *Hoguet*, 65 App. Div. 200.) The provision in this declaration for the benefit of the seven annuitants did not affect the validity of the transaction, although the annuities were to be paid out of income. (*Matter of Howe*, 1 Paige, 214; *T. B. Church* v. *E. A. Church*, 60 App. Div. 335; *Tinkham* v. *E. R. Co.*, 53 Barb. 393; *Currin* v. *Fanning*, 13 Hun, 471; *Booth* v. *B. Church*, 126 N. Y. 247; *Sheldon* v. *Chappell*, 47 Hun, 61.)

CULLEN, Ch. J.   One of the learned counsel for the respondents challenges the right of the plaintiff to maintain this action and to take advantage of the prohibition contained in chapter 360 of the Laws of 1860, which enacts that "no person having a husband, wife, child or parent shall, by his or her last will and testament, devise or bequeath to any charitable, etc., corporation   *   *   *   more than one-half of his or her estate," because he is not one of the relatives mentioned in the statute, but only a collateral. The Appellate Division overruled this claim and rightly so, for the question is not an open one. Forty years ago in *Harris* v. *American Bible Society* (2 Abb. Court of Appeals Decisions, 316) this court held that the provision of the statute may be insisted on by any person who derives a benefit therefrom, although not one of the relatives designated in the statute. The case has been repeatedly followed and its authority has never been questioned. As late as the 136th New York this court said in *Matter of Will of Walker* (p. 20) that a will is to be read as if the statutory restriction was part of it and it had in terms provided that the legacies or devises given by it to charitable corporations should not exceed one-half of the estate. Though the plaintiff can take advantage of the statute, there is no advantage to be taken in this case if the deed or declaration

of trust stands, for in that event the legacy to the widow exceeds one-half of the testator's estate. The learned Appellate Division was of opinion that there was proved a parol agreement antedating the declaration of trust by which the college was to receive the securities mentioned in the declaration in consideration of its founding and maintaining the professorial chair. We think not. The testimony shows merely indefinite negotiations which were not consummated until the execution of the declaration of trust, and into which the prior conversations must be deemed to have merged. We are, therefore, brought to a consideration of the character, effect and validity of the declaration of trust and of the several objections to it raised by the counsel for the appellant.

That the execution and delivery to the college of the declaration or deed was sufficient to create a trust if the terms of the trust were not illegal we think very clear. While to make an effective gift delivery to the donee is essential (*Young* v. *Young*, 80 N. Y. 422), that is not necessary in the creation of a trust. The distinction between the two cases is pointed out in the case cited, and in the later one of *Beaver* v. *Beaver* (117 N. Y. 421). In the case of personal property an unequivocal declaration of the trust by the settlor impresses it with a trust character, and converts his legal title to that of trustee for the person for whose benefit the trust is created. (*Martin* v. *Funk*, 75 N. Y. 134; *Young* v. *Young, supra; Beaver* v. *Beaver, supra*.) Here the founder of the trust executed the declaration under seal and delivered it to one of the *cestuis que trustent*. This, under all the authorities, was sufficient.

It is contended, however, that if the deed of trust constituted two separate consecutive trusts, one during the life of the founder, the other after his decease, as the Appellate Division has held, then the second trust was testamentary in its character and the trust deed not having been executed in compliance with the statutory requirement for the execution of wills, fails. This was the ground on which the trial court based its decision. This argument is based on a clear misapprehension

of the distinction between a testamentary instrument and a deed. Doubtless the second trust created by the declaration was not to take effect in possession or enjoyment till the death of the founder. But this was by reason of the terms of the instrument itself, not because that instrument was testamentary. (See *Grafing* v. *Heilmann*, 1 App. Div. 260; affd. on opinion below, 153 N. Y. 673.) Under the declaration the rights of the beneficiaries accrued at the time of its execution and delivery, and except as the instrument itself contained a power of revocation either in whole or part, those rights could not be affected or modified by the subsequent acts of the founder of the trust. This distinction is clearly pointed out by Mr. Jarman in his work on Wills (p. 17): " A will is an instrument by which a person makes a disposition of his property, to take effect after his decease, and which is in its own nature ambulatory and revocable during his life. It is this ambulatory quality which forms the characteristics of wills; for, though a disposition by deed may postpone the possession or enjoyment, or even the vesting, until the death of the disposing party, yet the postponement is, in such case, produced by the express terms, and does not result from the nature of the instrument. Thus, if a man, by deed, limit lands to the use of himself for life, with remainder to the use of A. in fee, the effect upon usufructuary enjoyment is precisely the same as if he should, by his will, make an immediate devise of such lands to A. in fee; and yet the case fully illustrates the distinction in question; for, in the former instance, A., immediately on the execution of the deed, becomes entitled to a remainder in fee, though it is not to take effect in possession until the decease of the settlor, while, in the latter, he would take no interest whatever until the decease of the testator should have called the instrument into operation." Nor does the fact that a deed of trust contains a full power of revocation render the instrument testamentary. This was expressly decided by this court in *Van Cott* v. *Prentice* (104 N. Y. 45). In the present case only a limited power of subsequent modification was reserved to the founder.

. It is next contended that the creation of the trust was a fraud on the provisions of the act of 1860 already cited. This contention also proceeds on a misconception of the purpose and effect of that statute. The statute, as said by VANN, J., in *Amherst College* v. *Ritch* (151 N. Y. 282), " does not prohibit charitabl? gifts altogether, but only under certain circumstances, to a certain extent and by a certain method. If the gift is not made by will, or if made by will and the testator leaves no surviving relative of the degree named, or it is to charities other than those mentioned, there is no prohibition. It does not compel a testator to leave his property or any part thereof to relatives. It does not prevent him from giving all that he has to charity during his lifetime. It is aimed simply at the giving of an undue proportion to charity *by will*, when certain near relations have, in the opinion of the legislature, a better claim." The same doctrine is asserted in the dissenting opinion in that case of Chief Judge ANDREWS : "What the statute plainly did intend was to prohibit one form of donation to corporations, described · in the act, which would exceed one-half of the donor's estate, namely, a donation by will. The donor was not permitted by will to give to the charities mentioned beyond the prescribed amount. The statute regulated and restricted *testamentary donations, and no others.* * * * The corporations enumerated in the statute were those to which, in the last days of life, a man, acting under mistaken notions of duty, might voluntarily or through persuasion be induced to give his property in disregard of the just claims of kindred." The danger or possible evil to guard against which the statute was enacted would generally, though not exclusively, arise in the case of donations by will. Therefore, it was entirely within the power and the right of Mr. Wallace to give to the college by deed of trust such part of his estate as he saw fit, and even though this was done in view of the statutory restrictions · on donations by will, his act contravened neither the letter nor the spirit of the statute.

We are now brought to the interpretation of the deed of trust and the legality of its provisions. We agree with the

learned Appellate Division that it constituted two independent trusts successive and not concurrent, the first during the life of the settlor, the second after his decease. The validity of the first, and of the direction that at the death of Mr. Wallace certain sums, aggregating $32,000, should be paid to specified beneficiaries seems subject to no criticism. These provisions are readily severed from the subsequent trust and should be upheld regardless of the validity of that trust. (*Harrison* v. *Harrison*, 36 N. Y. 543; *Woodgate* v. *Fleet*, 64 N. Y. 566; *Underwood* v. *Curtis*, 127 N. Y. 523.)

Those sums, therefore, constituted no part of the testator's estate. As to whether the gift of the remainder of the estate subject to the payment of the annuities is to be considered as a gift to its own use under the doctrine of *Bird* v. *Merklee* (144 N. Y. 544) and *Matter of Griffin* (167 N. Y. 71), or the creation of a trust, it is unnecessary to determine, for even accepting the latter view, under the law of 1893 the trust would be valid. (*Allen* v. *Stevens*, 161 N. Y. 122.) This provision, therefore, creates no embarrassment. The difficulty in the case arises from the fact that the property is first given in trust for the payment out of the income of annuities to seven annuitants during their respective lives. That a trust to pay an annuity is a valid trust under our statutes and that such an annuity is inalienable was decided by this court in *Cochrane* v. *Schell* (140 N. Y. 516). The language of the trust deed or declaration is too clear and explicit to permit the construction that it was intended to make the annuities a mere charge on the corpus of the estate. Construed as a trust to pay annuities the trust is invalid under the laws of this state because it suspends the absolute ownership of the property for more than two lives in being. (Pers. Prop. Law, § 2.) The suggestion is made by the learned Appellate Division, as we understand the opinion, that since the ultimate trust is for charity, and that may be made in perpetuity, the trust during the lives of the seven annuitants cannot add anything to the inalienability of the fund. To this suggestion, for it is only such, we cannot accede. If it were accepted it

would practically abrogate all our statutory limitations upon the power to suspend the alienation of real estate or the absolute ownership of 'personal property, for a grantor or testator might create any number of legal or equitable life estates whether for persons in being or not and for any term of years, provided he gave the ultimate remainder, however remote, in trust for a charity.

We are, therefore, of opinion that this trust is invalid under the laws of this state, but we are also of opinion that those laws do not control. The trustee is a corporation created by and located in the state of Pennsylvania. The fund is to be there held and the trust to be there administered. Therefore, if the trust, though invalid by our law, is legal under the laws of Pennsylvania, the fund should be transmitted to that state and the trust upheld. (*Chamberlain* v. *Chamberlain*, 43 N. Y. 424; *Hope* v. *Brewer*, 136 N. Y. 126.) The limitations on the power to tie up property to which we have referred as rendering the trust invalid in this state are solely the creation of our statute law. At common law all equitable interests were alienable by the beneficiaries except in the case of married women (*Bryan* v. *Knickerbacker*, 1 Barb. Ch. 409), and the rule against perpetuities, ultimately applied to personal property as well as to real estate (Gray on Perpetuities, § 98), and equally controlling equitable as well as legal interests, requires only that future estates shall vest within a life or lives in being and twenty-one years. (1 Perry on Trusts, §§ 380, 382.) The trust, therefore, would be good at common law. There is no presumption that our statute law prevails in other states. The presumption is that the common law there obtains. (*First Nat. Bank of Paterson* v. *Nat. Broadway Bank*, 156 N. Y. 459.) There was no evidence given at the trial as to the law of Pennsylvania on the subject. The Appellate Division was, therefore, justified in reversing the judgment of the trial court, but we think it should have ordered a new trial, for foreign law is usually a question of fact (*Genet* v. *Delaware & Hudson Canal Co.*, 163 N. Y. 173), and the validity or invalidity of this trust is the subject of proof. We do not

know what the Pennsylvania law is on the subject, for it is possible that the common law may have been changed in that state as in our own by statute, nor do we know to what extent it has been adopted. Seemingly in that state, as in some others, even without statute there has been developed the doctrine of so-called "spendthrift" trusts which are inalienable by the beneficiaries (*Overman's Appeal*, 88 Penn. St. 276), though this would constitute no factor of the common-law rule against perpetuities.

We are of opinion, therefore, that the judgment of the Appellate Division in so far as it dismissed the complaint was erroneous, that that judgment should be so modified as to direct a new trial, and as thus modified affirmed, without costs in this court to either party.

GRAY, EDWARD T. BARTLETT, WERNER, HISCOCK and CHASE, JJ., concur; O'BRIEN, J., absent.

Judgment accordingly.