## LAMKIN, EXR., ET AL. v. ROBINSON ET AL.

*Stocks and bonds—Title—Declaration of trust complete, when —Instrument conveying daughter's stock to father—Should father survive and daughter die without children—Res adjudicata.*

Where the owner of a number of shares of stock executes a written instrument, which, after reciting ownership of the stock and acknowledging receipt of consideration, recites that her father is to have and retain possession of such shares of stock during his lifetime; is to collect the dividends thereon and apply them to his own use; is to vote such stock and with her consent and approval sell it and reinvest the proceeds; that at his death, she, if living, or if dead, her issue, shall enjoy the complete ownership of the stock; and that in the event of her dying before he does, leaving no issue of her body, "then the said trust shall lapse and the said stock is to revert to him," such owner thereby creates a complete, executed and valid declaration of trust, and in the case of her death before her father's, leaving no issue of her body, the father succeeds to absolute ownership of the stock.

(Decided May 29, 1922.)

ERROR: Court of Appeals for Hamilton county.

*Mr. John C. Healy* and *Mr. Howard Ferris*, for plaintiffs in error.

*Messrs. Stephens, Lincoln & Stephens* and *Mr. Rufus B. Smith*, for defendants in error.

BUCHWALTER, J. These proceedings in error were brought to reverse a judgment entered in the superior court of Cincinnati in an action wherein John F. Robinson was plaintiff, and Harry G. Lam-

kin, both as executor of Pearl R. Lamkin and individually, and certain corporations, were defendants.

The corporations named as defendants are not interested in the cause, except for the purpose of transferring the shares of stock in controversy, as the court may order.

John F. Robinson will hereinafter be designated as plaintiff and Harry G. Lamkin as defendant.

While the action was pending, plaintiff died, and the cause was revived in the name of his executor.

Defendant was the husband of Pearl R. Lamkin, who was a daughter of plaintiff, and so far as the shares of stock are concerned he was the sole beneficiary under her will.

The shares of stock in the defendant companies, which are the subject-matter of this litigation, stand on the books of such companies in the name of Pearl R. Lamkin.

Plaintiff claims the ownership of the stock by reason of a written agreement executed by Pearl R. Lamkin on March 3, 1905.

This agreement was executed in five copies, in the presence of witnesses, one copy being filed with each of the various defendant companies.

The action was for specific performance of the written agreement, and to compel the defendant companies to accept the surrender of the certificates issued in the name of Pearl R. Lamkin and to issue new certificates to the plaintiff.

The defendant by answer avers that the contract was executory and without consideration; was the result of undue influence exerted by the father while Pearl R. Lamkin was a member of his household, and without any independent advice, and that the

gift, to take effect after her death, was testamentary in character, hence void as not being executed in accordance with the laws governing wills. By way of cross-petition defendant asks that specific performance be denied, that he be declared the owner of the certificates, subject, however, to the plaintiff's right to the dividends thereon during his life.

The ownership of the shares of stock and the dividends thereon accruing since the death of Pearl R. Lamkin depends upon the validity of Section 4 of the instrument executed March 3, 1905.

If that section is valid, the shares became the property of plaintiff at the time of the death of Pearl R. Lamkin; if invalid, they passed under her will to the defendant, subject, however, to plaintiff's right to the dividends during his life.

The instrument is as follows:

"Whereas, I am the owner of certain stocks, to-wit, five hundred and eight (508) shares of the capital stock of The United States Playing Card Company, evidenced by Certificate No. ——.

"Eight hundred and three and three-fourths (803¾) shares of the capital stock of the United States Printing Company, evidenced by Certificate No. ——; and fifty (50) shares of the W. B. Oglesby Paper Company evidenced by Certificate No. ——; now, this agreement is to show:

"That for and in consideration of one dollar and other good and valuable consideration to me paid, the receipt whereof is hereby acknowledged:

"1. The said John F. Robinson is to have and retain possession of said shares of stock for and during the term of his natural life and collect

the dividends thereon and apply them to his own use and he shall never be called upon to account for them to me or my executors or administrators.

"2. He is to vote the said stock at any and all elections of the said companies, respectively; and for this purpose I hereby authorize him, the said John F. Robinson as my true and lawful attorney, with power of substitution and revocation for me and in my name to vote at any and all meeting or meetings of stockholders of said companies with all the powers I should have if personally present.

"3. That with my consent and approval, when in his judgment it is advisable to do so, to sell the said stock and reinvest the proceeds of sale.

"4. In the event of my dying before he does, leaving no issue of my body, then the said trust shall lapse and the said stock is to revert to him; and to carry out this condition I hereby authorize and empower the said United States Playing Card Company and The United States Printing Company, and The W. B. Oglesby Paper Company, and the respective officers of each to transfer the said shares of stock so transferred to me to the said John F. Robinson at his request.

"5. Should I die before my father, leaving issue, his rights hereunder shall continue and at his death the said stock is to become the property of my children or their descendants.

"6. Should my father die before I do then the said stock is to come into my possession again and become fully my property.

"7. This agreement is to be in effect during the life of my said father—subject, of course, to our right to change the terms at any time we may agree to do so.

"In Testimony Whereof, I have hereunto set my hand in quintriplicate—one copy for myself, one for John F. Robinson, and one for each of the said companies, this third day of March, A. D. 1905.
"Witnesses:
  "R. C. BELT,
  "JOHN F. ROBINSON.

                    "PEARL R. LAMKIN."

The original investment was made by plaintiff who became one of the partners in Russell & Morgan. Later, to-wit, in December, 1883, the partners formed a corporation known as The Russell & Morgan Company. At the time of incorporation, the plaintiff received ninety-nine shares of stock of the par value of $1,000 each in the new company. In 1884 the plaintiff transferred ninety-five (95) shares of this stock to his wife Caroline F. Robinson, in order to protect his family in the event of misfortune, with the understanding that she would make a will returning it to him in case he survived her.

During the years that she held this stock the plaintiff received and used the dividends in the same manner as he had prior to the transfer.

Caroline F. Robinson died suddenly in 1899, without making a will, leaving her husband, the plaintiff, and four minor children surviving her.

Plaintiff's brother was appointed administrator of the estate and plaintiff was appointed guardian of his four children. The shares were inventoried and appraised as the property of Caroline F. Robinson. Plaintiff did not claim his one-third interest, but received the dividends, and used them, and all of the children gave receipts in full to him

therefor when they became of age. The certificates of stock were transferred to their names at this time, although plaintiff retained the certificates.

The daughters, Caroline and Pearl, were then each holder of 23¾ shares of stock in The Russell & Morgan Printing Company. In 1894 The United States Printing Company bought out The Russell & Morgan Printing Company and Pearl Robinson received 853¾ shares of stock in the new company. Later, a part of the business of The United States Printing Company was acquired by The United States Playing Card Company, and 508 shares of the stock of the last named company were issued to her. By subsequent exchange of 50 shares of the stock of The United States Printing Company she received 50 shares of stock in the W. B. Oglesby Paper Company.

In 1915, The United States Printing Company formed a consolidation with other companies, and in lieu of the 803¾ shares remaining in The United States Printing Company there were issued to Pearl R. Lamkin, under the name of Pearl Robinson, 522 43/100 shares of first preferred stock and 281 31/100 shares of the second preferred stock of The United States Printing & Lithographing Company. The petition alleges 381 31/100 shares of second preferred, and the briefs and decree below also state that number, but from the evidence that is apparently an error.

Plaintiff continued to take and use the dividends until Caroline, one of the daughters, desired in 1901 to marry one Horace Stevens, contrary to plaintiff's wish, and she transferred to plaintiff her shares of the stocks. In 1903 plaintiff transferred

these shares to her name, and at the time she signed an agreement similar to the one signed by her sister, Pearl, March 3, 1905, except that it did not include the Oglesby stock.

On March 1, 1905, Pearl married the defendant, without her father's knowledge or consent, and returned home the same day, and her husband returned to Columbus, where he was employed.

On March 3, 1905, Pearl signed a receipt, acknowledging settlement in full of all accounts between her father and herself, and mentioning particularly moneys collected by him as dividends on the stocks, and also signed the instrument hereinbefore set forth; at the same time she executed a will embodying the same provisions.

In 1908 the plaintiff married a second time, and Pearl, after notifying the various companies that she claimed the dividends, brought suit against the plaintiff to set aside the agreement of March 3, 1905.

Her sister filed a similar suit and the cases were heard together in the common pleas, circuit and supreme courts.

In 1918 Pearl Lamkin died, leaving no children surviving her.

This action was then brought by plaintiff to enforce the agreement above set forth and secure the unconditional ownership of the shares of stock.

The only question involved is the validity of Section 4.

One of the errors complained of is that the trial court did not consider any evidence introduced tending to show undue influence, fraud or lack of consideration, on the theory that these matters had been passed upon in the case of *Lamkin* v. *Robin-*

*son*, 88 Ohio St., 603, and were, therefore, *res adjudicata* as to the entire instrument.

After the decision was announced, and before the findings of law and fact requested by defendant had been formulated by the court, defendant offered an affidavit and certain exhibits as to the manner in which the new stock was issued by the United States Printing & Lithographing Company, and as to the taking up by Pearl Lamkin of certain subscription rights for additional stock in the United States Playing Card Company, and, by motion, asked for leave to file an amendment to his second answer and cross-petition, setting up these facts.  This motion was overruled.

The new stock issued by The United States Printing & Lithographing Company was a substitution for other stock mentioned, and by Item 3 of the agreement could be substituted by consent.  The original certificate was issued in the name of Pearl Robinson and her consent was necessary to make the exchange.  There can be no question but that this stock would be bound by the instrument of March 3, 1905, and the answer of defendant practically admits it.  Nor do we see how the fact that Pearl Lamkin subscribed to the additional shares of The United States Playing Card Company can affect this issue.

She was a stockholder of record, the option to subscribe was given to all stockholders of record. It was not a dividend declared on stock already issued, and, hence plaintiff had no rights therein.  He was familiar with the transaction, assisted in carrying it out by acting for her under power of attorney.  This was not an abandonment of the agreement of March 3, 1905.

These matters as well as other evidence in reference to want of consideration, undue influence, etc., would be material if these issues were not prejudged by the prior decision. If these questions are *res adjudicata,* the consideration of this evidence was properly excluded by the trial court.

In the original action of *Lamkin* v. *Robinson, supra,* it was prayed that the agreement be set aside. The answer and cross-petition asked that it be upheld and enforced.

It is true the opinion of the circuit court, 15 C. C., N. S., 126, at 128, states:

"It is claimed that Item 4 of said agreements is testamentary in character and void for absence or inadequacy of consideration. As said Item has nothing to do with the questions in this case and can have no effect until the death of one of the plaintiffs we have deemed it unnecessary to consider the validity of 'Item 4' and the decree may so recite."

But the decree contains the following:

"The Court finds that the defendant is entitled for the term of his life to the dividends upon the stocks in controversy in this case and set forth in the petition herein, together with the other rights given him by the instrument in writing of March 3, 1905, set forth in the petition, *which instrument the Court finds to be valid and subsisting except the right of survivorship provided in Item 4 thereof, which the Court finds it unnecessary to pass upon and does not do so. * * * Wherefore it is considered, adjudged and decreed that the defendant have and he is hereby awarded the right to draw the dividends on said stock during his life and the other rights specified in said instrument*

*of March 3, 1905, except the right of survivorship, which is not decided as aforesaid* * * *. *And that subject to the provisions of said instrument of March 3, 1905, the plaintiff (Pearl R. Lamkin) is the owner of said stock."*

It was the decree and not the opinion of the court which was affirmed by the supreme court.

It has been vigorously contended that by that decree the court merely · refused to exercise its equitable powers and set aside the contract, and therefore left the parties as they were except as to dividends, and that when the dividends were allowed to Robinson it was because of the long acquiescence of the daughter to this arrangement.

But the issues of lack of consideration, duress, etc., were fully presented. The common pleas court found the instrument void for lack of consideration, and on appeal the circuit court declared it a "valid and subsisting agreement," the opinion stating, at page 128:

"These agreements, so far as they related to the dividends, did not change the situation of the parties. They simply created in the defendant, *as a legal right*, that which he had been exercising by the consent and acquiescence of plaintiffs since they became of age."

It is further claimed that the court held there were various separate agreements embodied in the one instrument, because the circuit court mentioned agreements. It must be remembered that there were two cases presented at the same time, one by Caroline Stevens, and one by Pearl Lamkin, and the word agreements in the decision evidently refers to the two instruments, one signed by each.

Many cases are cited by counsel for plaintiff in

error to the effect that the dismissal of Pearl R. Lamkin's petition to set aside the contract of March 3, 1905, was for want of equity, and conferred no rights on Robinson, as the judgment was rendered on his cross-petition, the principal cases relied on being *Cramer* v. *Moore,* 36 Ohio St., 347, and *Porter* v. *Wagner,* 36 Ohio St., 471.

The case of *Cramer* v. *Moore* is one in which the plaintiff had no right to maintain the equitable ac-, tion, and it was dismissed, hence he was entitled to put the same questions in issue in defense in an action at law. In other words, he was simply left to his remedy at law. The court says at page 349:

"We do not question the principle insisted upon on behalf of the defendant in error, Moore, that a judgment of a court of competent jurisdiction, upon a question necessarily involved in a suit, is conclusive in a subsequent suit between the same parties, depending on the same question; and in respect to this quality of conclusive effect upon parties and privies, the decrees of courts of equity, upon matters within their jurisdiction, stand upon the same footing with judgments at law."

In *Porter* v. *Wagner* the court refused equitable relief and left the parties to pursue their legal rights.

These cases were both decided on the principle that if equitable relief is denied, either because there is an adequate remedy at law or because no case is made out for distinctly equitable relief, and the court leaves the parties to their rights at law, there is no estoppel.

The cases of *Porter* v. *Wagner* and *Cramer* v. *Moore* are both considered and construed as above in *Stewart* v. *Village of Ashtabula,* 98 Fed. Rep.,

516, at 519, and *Stewart* v. *Village of Ashtabula,* 107 Fed. Rep., 857. In the last-named case, Judge Day, at page 863, says:

"In the Cramer Case the court puts the decision upon the ground that the former equity proceedings may have been dismissed because of want of equity. The statement of the rule in the Porter Case that a judgment is conclusive only as to facts without the proof or admission of which it cannot be rendered is undoubtedly a correct statement of the law. It is equally true, and a necessary corollary of this proposition, that, when facts have been found essential to the determination of the issues, parties are estopped from relitigating the same."

The rule has been established since the time of the case of *Rex* v. *Duchess Dowager of Kingston,* 20 Howell's State Trials, 355, that a judgment of a court of concurrent jurisdiction, directly upon the point, is, as a plea, a bar, or, as evidence, conclusive, between the same parties, upon the same matter, directly in question in another court.

In *Hixson* v. *Ogg,* 53 Ohio St., 361, the syllabus is:

"Where issue has been joined on a material fact in an action, and the issue judicially determined and carried into judgment by a court having jurisdiction of the action, the parties to such action are concluded by such finding until the judgment is reversed or set aside. And the fact thus established cannot be retried by the same parties in any subsequent action, whether the second action is upon the same or a different subject-matter from the first. In this respect it is immaterial that one

of the actions may have been *ex contractu* and the other *ex delicto.*"

In *Southern Pacific Rd. Co.* v. *United States,* 168 U. S., 1, at 48, Justice Harlan says:

"The general principle announced in numerous cases is that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and even if the second suit is for a different cause of action, the right, question or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified."

In the case of *Lamkin* v. *Robinson, supra,* the action was to set aside the instrument of March 3, 1905, to recover possession of the stock, and also the dividends collected by John F. Robinson, and dividends which accrued subsequent to the bringing of the suit. Plaintiff alleged fraud, undue influence, lack of knowledge and no consideration. Robinson, by answer and cross-petition, denied all the allegations of fraud, undue influence, lack of knowledge and lack of consideration, and prayed for an order adjudging the agreement valid and directing that he be entitled to possession of the stock during his lifetime, and absolutely, if his daughter died before him, without issue.

All matters not admitted by the petition were denied in the reply.

The court of common pleas by its decree awarded to Pearl R. Lamkin the dividends which had accrued since she revoked her father's authority, at the time of bringing her suit, and declared the in-

strument of March 3, 1905, invalid because executed without consideration; and ordered it set aside and held for naught.

When heard on appeal in the circuit court, that court found by its decree that Robinson was "entitled for the term of his life to the dividends upon the stocks in controversy * * * together with the other rights given him by the instrument in writing of March 3, 1905, * * * which instrument the court finds to be valid and subsisting except the right of survivorship provided in Item 4 thereof, which the court finds it unnecessary to pass upon and does not do so." This decree, affirmed by the supreme court, not only gave Robinson the right to collect and use the dividends, but also the right to keep possession of the stock certificates, to vote the stock, and to act as attorney for Pearl R. Lamkin in reference thereto. As the dividends were in the hands of a trustee, pending the litigation, it was necessary for the court to decide to whom they belonged, and the rights of the parties were there determined.

Alleged fraud, undue influence, lack of knowledge and of consideration as to the entire instrument were issues raised in the case, and were necessarily involved, considered and determined by the judgment. These issues cannot again be litigated.

The holding of the trial court in the instant case that these matters are *res adjudicata* is not erroneous.

Item 4 was left open and not determined by the circuit court in the prior hearing, and this was probably because there was small likelihood at that time that the contingencies stipulated would hap-

pen, to-wit, that Pearl would die before her father, without leaving issue.

The only remaining question of moment to be determined is whether or not Item 4 is invalid for any reason other than fraud, undue influence, lack of knowledge or consideration.

It is contended that the item is executory and testamentary, and, that, therefore, the stocks would pass to the defendant by will.

The plaintiff claims that when the instrument was signed, an executed trust was established, and, that, therefore, the item was not testamentary.

The instrument provides that the plaintiff shall retain the certificates of stock, collect and use the dividends during his lifetime, vote the stock, and act as attorney for Pearl R. Lamkin in reference thereto. Robinson was given dividend rights during his lifetime, with full power to safeguard those rights. At his death, if Pearl R. Lamkin was alive, she was to enjoy the complete ownership, or if her death preceded his and she left issue they should be the unconditional owners. In the event of Pearl's death, without issue, Robinson succeeded to all rights of ownership. By this arrangement, all contingencies were provided for, and the instrument is clear, complete and definite.

The court found that Pearl was the legal owner and that the beneficial interest in the stock was held by her father, and, by the decree therein, holding that all items of the instrument were valid, except the survivorship in Item 4, which was not passed upon, the legal owner put the physical possession of the stock in the hands of her father. She had declared the trust and notified the defendant companies. She had put it out of her power to

change the investments without the consent of the *cestui que trust*. He also was without power to change the investments, or to sell the securities without her consent, as the certificates had never been endorsed by her.

The specific authority granted by the instrument to plaintiff to act, even after the death of Pearl R. Lamkin, was passed upon in the prior suit. Therein the agreement was declared valid and subsisting. How, therefore, can this be an executory trust?

In *Estate of Thomas Smith, Deceased*, 144 Pa. St., 428, syllabus 2, it is held:

"An executory trust, properly so called, is one in which the limitations are imperfectly declared, and the donor's intention is expressed in such general terms that something not fully declared is required to be done, in order to complete and perfect the trust and to give it effect. When the limitations are fully and perfectly declared, the trust is regarded as executed."

All limitations are fully and definitely declared. Had this stock been transferred to another person to hold as trustee, and the same provisions made as are incorporated in this instrument, it would not have been invalid. Pearl R. Lamkin held only the naked, legal title, and by her declaration of trust, and she designates it as trust in Item 4, she made her act irrevocable, except with the consent of the *cestui que trust*. She further executed copies of the instrument, which were served on the companies issuing the stock, so that her declaration of the trust was made to all interested parties.

An owner may declare himself a trustee in the same manner as if he transferred the legal title to

a third person with a similar declaration. *Estate of Thomas Smith, deceased, supra,* syllabus 4.

In the case of *Bruer* v. *Johnson et al.,* 64 Ohio St., 7, it was held that a person may *sui juris,* orally, or in writing, declare that he holds personal property for another, and that such declaration constitutes him a trustee of such property, and also that such a declaration of trust may operate after the death of the declarant.

This was a trust where no consideration was paid. There is nothing in the instrument in question that is executory. An owner may declare a trust and hold the naked, legal title in the same manner as if the title is transferred to a neutral trustee, and in this case the beneficial interest is separated from the legal title. This principle is referred to in *Jones* v. *Luplow,* 13 Ohio App., 428; *Flanders* v. *Blandy,* 45 Ohio St., 108, 116; *Worthington, Admr.,* v. *Redkey, Exr.,* 86 Ohio St., 128, syllabus; *Locke* v. *Farmers' Loan & Trust Co.,* 140 N. Y., 135, and *Martin* v. *Funk, Admr.,* 75 N. Y., 134.

The court is of the opinion that this was a valid, executed trust, complete, definite and precise in its terms, all conditions of which can be fully carried out, and that the subject-matter concerns property which is subject to contract.

Holding the instrument to be a complete, executed and valid declaration of trust precludes the theory that it is testamentary. It may be well, however, to briefly consider the question of whether or not Item 4 could be considered testamentary in character. If so, it would be an endeavor to transfer personalty after death, without the formal requirements of a will, which would be revoked by a subsequent will. A will does not take effect until the death of

the testator. It may be revoked at any time prior to death and no rights are acquired thereunder until after the death of the testator.

Under the instrument herein, rights are given during the lifetime of Pearl R. Lamkin. It is true that some of these rights are to take effect in possession and enjoyment only upon the happening of certain contingencies, that is, the death of Pearl R. Lamkin, without issue, but the rights given could not be revoked by her alone. The rights were granted at the time of the execution of the instrument, although possession and enjoyment of some of those rights were postponed until her death. Such an instrument is not testamentary. Disposition of property to take effect at death may be controlled and not be testamentary if a present interest passes, and the disposition made is not revocable. *Robb* v. *Washington and Jefferson College,* 185 N. Y., 485; *Patrick* v. *Parrott,* 92 Ohio St., 184; *Lewis* v. *Curnutt et al.,* 130 Ia., 423, and *Emery* v. *Darling,* 50 Ohio St., 160.

It is also contended that the defendant by this trust agreement was deprived of his rights in the stock, and that this was a fraud upon his marital rights. We do not consider that there is any merit in this contention. Sections 7998 and 7999, General Code, and *Urner, Gdn.,* v. *Yager,* 15 W. L. B., 264 affirmed 27 W. L. B., 148.

An examination of the record and a study of the voluminous briefs filed herein do not disclose any error prejudicial to the plaintiff in error.

The decree below refers to 381 31/100 shares of the second preferred stock in The United States Printing & Lithographing Company. This should be corrected to read 281 31/100 shares.

The judgment below, with the above correction, will be affirmed.

*Judgment affirmed.*

HAMILTON, P. J., and CUSHING, J., concur.