CARLETON H. PALMER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 89854.   Promulgated December 5, 1939.

*M. T. Moore, Esq.*, and *George G. Tyler, Esq.*, for the petitioner.
*George R. Sherriff, Esq.*, for the respondent.

**OPINION.**

Tyson: The issue presented is whether the petitioner is taxable upon the $25,503 dividends declared and paid during the period May 26 to December 31, 1932, upon the shares of E. R. Squibb &

Sons stock which were the subject matter of the trust agreement of May 26, 1932, as set forth in our findings of fact.

The respondent determined, and now contends, that the execution of the trust agreement of May 26, 1932, was ineffectual; that there was no complete, irrevocable conveyance of the stock to the trust *in praesenti;* that the petitioner retained and continued to exercise throughout 1932 the unfettered dominion and control over the stock; that the petitioner was the owner of the stock during the taxable year; and that, therefore, the dividends in question, which were paid direct to petitioner by E. R. Squibb & Sons and immediately thereafter by petitioner to his wife, are taxable to him under the provisions of section 22 (a) of the Revenue Act of 1932.[1]

In our opinion the trust agreement of May 26, 1932, clearly evidences the petitioner's intention to irrevocably convey, *in praesenti*, to the trust his legal title to the stock in question, and, also, to irrevocably convey, *in praesenti*, the beneficial interest in such stock including the income arising therefrom to his wife during her lifetime, with remainder interests to his children and their issue. Further, in our opinion, the trust agreement effectuated such irrevocable conveyance.

The fact that the stock referred to in the trust agreement of May 26, 1932, was at that time pledged by petitioner as collateral security for certain loans did not prevent the petitioner's conveyance of such stock to a valid trust, subject to the existing lien, for the petitioner, as the pledgor, retained the title to and the proprietary interest in that stock, while the pledgee had only a lien on the stock for the amount of the loan, the right to possession of the stock until the loan was repaid, and the right to sell same in case of default in payment of the loan. *Gillet v. Bank of America*, 160 N. Y. 549; 55 N. E. 292; *In re Hallenbeck's Estate*, 231 N. Y. 409; 132 N. E. 131; *Walter F. Henningsen*, 30 B. T. A. 301. "Every kind of vested right which the law recognizes as valuable may be transferred in trust." *United States Trust Co. of New York v. Commissioner*, 296 U. S. 481, 487. Furthermore, the petitioner expressly covenanted with the trustees "to indemnify and hold harmless the Trust Estate against the collection of any of said loans, or any part thereof, out of said shares of stock, or any part thereof", and he was in a financial position to carry out that covenant.

---

[1] SEC. 22. GROSS INCOME.

(a) GENERAL DEFINITION.—"Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *

The fact that the petitioner was unable to make a manual delivery of the stock in question to the trustees because it was pledged as security, and the further fact that during the taxable year the stock remained registered in the petitioner's name, did not preclude a sufficient delivery and a completed transfer of said stock in trust on May 26, 1932, as contended by respondent, for the execution of the trust agreement, of itself, effectively passed title to the stock in question from the petitioner individually to himself and his wife as trustees, and the beneficial interest in the stock became vested in the *cestuis que* trust, who could enforce their rights thereto. *Estate of James F. Foster,* 13 B. T. A. 496; *Walter F. Henningsen, supra;* cf. *Robb* v. *Washington and Jefferson College,* 185 N. Y. 485; 78 N. E. 359; *In re Brown's Will,* 252 N. Y. 366; 169 N. E. 612; *In re Sweeney's Estate,* 155 Misc. 461; 279 N. Y. 927; *Daniel P. Woolley,* 39 B. T. A. 802.

The broad powers and control which the petitioner could exercise over the stock in question after the execution of the trust agreement are not indicia of individual ownership of the stock by petitioner, as contended by respondent. Under the trust agreement the petitioner, alone, but acting solely in his capacity as one of the trustees, was given authority to exercise such powers and by that instrument the legal title to and control over the stock passed from the petitioner individually, as grantor, to himself and his wife as trustees, just as effectively as if some other persons had received the conveyance as trustees. Those powers which petitioner as grantor reserved to himself as one of the trustees relate to the management of the trust corpus and do not vest in the grantor any control as an individual over the economic benefits or enjoyment of the trust property. *Reinecke* v. *Northern Trust Co.,* 278 U. S. 339, and *Henry A. B. Dunning,* 36 B. T. A. 1222; petition for review dismissed, 97 Fed. (2d) 999; cf. *Commissioner* v. *Waterbury,* 97 Fed. (2d) 383; certiorari denied, 305 U. S. 638 (affirming 33 B. T. A. 208). The petitioner's reservation of an option to reacquire the common stock from the trust by purchase at a fair price to be fixed by a specified formula prescribed in the trust instrument and over which he had no control after the execution of that instrument did not affect the validity of the trust and did not constitute a reservation by him of a power of revocation in whole or in part. Cf. *Shanley* v. *Bowers,* 81 Fed. (2d) 13. It is obvious that under such restrictions a sale by the trust of its Squibb common shares to petitioner would have no effect upon the continued existence of the trust, but would result merely in a change in character of the trust corpus by substitution of a fair purchase price paid for the stock in place of the stock itself.

While the respondent makes no contention for the application of either section 166 or section 167 of the Revenue Act of 1932 [2] in the instant case, we deem it proper, because of the nature of the issue involved, to hold that neither section is applicable. Here the trust, by its terms, was "irrevocable" and could be amended, modified, or changed only by the written consent of all of the adult beneficiaries and the trustee or trustees in office at the time and, further, no part of the trust income was or could be distributed to or held for future distribution to the grantor under any circumstances. See *Phebe Warren McKean Downs*, 36 B. T. A. 1129; *Meredith Wood*, 37 B. T. A. 1065; affirmed, *per curiam*, 104 Fed. (2d) 1013.

Under the express terms of the trust agreement the entire net income of the trust was distributable quarterly to Winthrop B. Palmer during her lifetime for her unrestricted use and during the taxable year in question such income was so distributed. We hold that the respondent erred in including in the petitioner's gross income for the year 1932 the dividends in the amount of $25,503 here in question.

*Decision will be entered under Rule 50.*

---

[2] SEC. 166. REVOCABLE TRUSTS.

Where at any time during the taxable year the power to revest in the grantor title to any part of the corpus of the trust is vested—

(1) in the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, or

(2) in any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom,

then the income of such part of the trust for such taxable year shall be included in computing the net income of the grantor.

SEC. 167. INCOME FOR BENEFIT OF GRANTOR.

(a) Where any part of the income of a trust—

(1) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, held or accumulated for future distribution to the grantor; or

(2) may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor; or

(3) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, applied to the payment of premiums upon policies of insurance on the life of the grantor (except policies of insurance irrevocably payable for the purposes and in the manner specified in section 23 (n), relating to the so-called "charitable contribution" deduction) ;

then such part of the income of the trust shall be included in computing the net income of the grantor.

(b) As used in this section, the term "in the discretion of the grantor" means "in the discretion of the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of the part of the income in question."