In the Matter of the Accounting of ELLIOTT L. BROWN, as Executor of J. ROMAINE BROWN, Deceased.

CENTRAL UNION TRUST COMPANY OF NEW YORK, as Trustee, et al., Appellants and Respondents; ELLIOTT L. BROWN, Individually and as Executor and Trustee, Respondent and Appellant.

(Argued November 20, 1929; decided January 7, 1930.)

*Albert Stickney* and *Albert B. Maginnes* for Central Union Trust Company, appellant and respondent. Decedent's ownership of the stock which was the subject of the alleged gift having been proved, is presumed to have continued. The burden was on the respondent executor to establish by a preponderance of evidence that the decedent delivered the property to him during his lifetime with the intention to make a gift, and this burden is not met by evidence showing the unexplained possession of the property by respondent. (*Matter of Canfield,* 176 App. Div. 554; *Matter of Perry,* 129 App. Div. 587; *Matter of Housman,* 182 App. Div. 37; 224 N. Y. 525; *Matter of Taber,* 30 Misc. Rep. 172; 54 App. Div. 629; *Matter of Manhardt,* 17 App. Div. 1; *Matter of Van Alstyne,* 207 N. Y. 298; *Matter of Rogers,* 10 App. Div. 593; *Matter of Gilman,* 92 Misc. Rep. 140; 175 App. Div. 185; *Tompkins* v. *Leary,* 134 App. Div. 114; *Matter of Crawford,* 113 N. Y. 560; *Matter of Cofer,* 121 Misc. Rep.

292; *Bowron* v. *De Selding,* 105 App. Div. 500.) The Appellate Division was correct in affirming the decree of the Surrogate with respect to the $17,000 check. (*Nay* v. *Curley,* 113 N. Y. 576.) Appellant executor has not established any valid gift to him of the Rockwood street or of the MacCombs road properties, or of the proceeds thereof. (Surr. Ct. Act, § 40; *Matter of United States Trust Co.;* 175 N. Y. 304; *Matter of Schroeder,* 113 App. Div. 204; *Ewell* v. *Stoddard Realty Co., Inc.,* 251 N. Y. 51; *Casco Nat. Bank* v. *Clark,* 139 N. Y. 307; *Bush* v. *Gilmore,* 45 App. Div. 89; *Maroney* v. *Cole,* 52 Misc. Rep. 451; *Brock* v. *Poor,* 216 N. Y. 387; *Worthington* v. *Worthington,* 100 App. Div. 332; *Butler* v. *Sherwood,* 196 App. Div. 603; 233 N. Y. 655.)

*Abel E. Blackmar* and *David S. Murden* for Mary E. Brown et al., appellants and respondents. The burden was on the executor, who affirmatively alleges that the stock was given to him, to prove such claim. (*McKeon* v. *Van Slyck,* 223 N. Y. 392; *Matter of Van Alstyne,* 207 N. Y. 298; *Ward* v. *New York Life Ins. Co.,* 225 N. Y. 314; *Noble* v. *Smith,* 2 Johns. 52; *Beaver* v. *Beaver,* 117 N. Y. 421; *Vincent* v. *Rix,* 248 N. Y. 76; *Matter of Gilman,* 92 Misc. Rep. 140; *Matter of Housman,* 224 N. Y. 525; *Matter of Canfield,* 176 App. Div. 554.) The evidence justified and required the decision that the $17,000 check was not a gift by decedent to the accounting executor and that, therefore, his account must be surcharged to that extent. (*Nay* v. *Curley,* 113 N. Y. 577; *Grey* v. *Grey,* 47 N. Y. 553; *Stimson* v. *Vroman,* 99 N. Y. 74; *Leask* v. *Hoagland,* 205 N. Y. 171.) The decision as to the avails of the Rockwood street property was correct. This fund was not the property of the executor as an individual. (Surr. Ct. Act, § 40; *Matter of U. S. Trust Co.,* 175 N. Y. 304; *Young* v. *Young,* 80 N. Y. 422; *Matter of Gurlitz,* 105 Misc. Rep. 30; 190 App. Div. 907; *Farmers Loan & Trust Co.* v. *Winthrop,* 238 N. Y. 477; *Wadd* v. *Hazelton,* 137

N. Y. 215; *Hutchins* v. *Van Vechten*, 140 N. Y. 115; *Sayer* v. *Wynkoop*, 248 N. Y. 54; *Beatty* v. *Guggenheim Exploration Co.*, 225 N. Y. 380; *Brock* v. *Poor*, 216 N. Y. 387; *Boag* v. *Thompson*, 208 App. Div. 132; *Matter of Green*, 231 N. Y. 237; *Palmer* v. *Ring*, 113 App. Div. 643; *Bush* v. *Gilmore*, 45 App. Div. 89; *C. N. Bank* v. *Clark*, 139 N. Y. 307.) The decision as to the avails of the sale of the MacCombs road property was correct. This fund was not the property of the executor as an individual. (*Wadd* v. *Hazelton*, 137 N. Y. 215; *Farmers L. & T. Co.* v. *Winthrop*, 238 N. Y. 477; *Young* v. *Young*, 80 N. Y. 422; *Butler* v. *Sherwood*, 196 App. Div. 603; 233 N. Y. 655.)

*Henry Wynans Jessup* and *Russel W. Leary* for Elliott L. Brown, respondent and appellant. The presumption of continuity of ownership is insufficient to justify findings adverse to the accounting executor. (*Plumb* v. *Richmond Light & R. R. Co.*, 233 N. Y. 285; *Potts* v. *Parde*, 220 N. Y. 431; *Rose* v. *Balfe*, 223 N. Y. 481; *Matter of Perry*, 129 App. Div. 587; *Matter of Gilman*, 92 Misc. Rep. 140; *Matter of Cofer*, 121 Misc. Rep. 292.) Evidence of subsequent declarations by the deceased donor that he " has given " is competent and sufficient to prove the delivery essential to a completed gift. (*Porter* v. *Gardner*, 60 Hun, 571; *Smith* v. *Maine*, 25 Barb. 33; *Crouse* v. *Judson*, 41 Misc. Rep. 338; 93 App. Div. 604; *Trow* v. *Shannon*, 8 Daly, 239; 78 N. Y. 446; *Messiah Home* for *Children* v. *Rogers*, 212 N. Y. 315; *Matter of King*, 115 App. Div. 751; 188 N. Y. 626; *Govin* v. *de Miranda*, 140 N. Y. 474; *Miller* v. *Silverman*, 247 N. Y. 447; *Matter of Rosenberg*, 251 N. Y. 115.) The evidence is ample to sustain the finding that the bank stock was delivered by the decedent to his son and executor with intent to make a gift. (*Livingston* v. *Arnoux*, 56 N. Y. 507; *Kennedy* v. *Smith*, 202 App. Div. 249; *Waterman* v. *Rigby*, 188 App. Div. 895; *People* v. *Snyder*, 41 N. Y. 397.) The decree is erroneous in so far as it surcharges the executor's

account with the proceeds of the testator's check for
$17,000. (*Nay* v. *Curley,* 113 N. Y. 575; *Leask* v.
*Hoagland,* 205 N. Y. 171.) The decree is erroneous as
a matter of law in so far as it surcharges the executor's
account with the value of the two parcels of real estate
known as MacCombs road property and Rockwood street
property. (*Zim* v. *Cohen,* 221 App. Div. 341; *Canda* v.
*Totten,* 157 N. Y. 281; *Smith* v. *Balcom,* 24 App. Div. 437;
*Foreman* v. *Foreman,* 251 N. Y. 237; *Waters* v. *Hall,*
218 App. Div. 149; *Widmayer* v. *Warner,* 192 App. Div.
499; *Wright* v. *Douglass,* 7 N. Y. 564; *Van der Volgen* v.
*Yates,* 9 N. Y. 219; *Hutchins* v. *Van Vechten,* 140 N. Y.
115; *Wendt* v. *Walsh,* 164 N. Y. 154; *Sinclair* v. *Purdy,*
235 N. Y. 245; *Bryant* v. *Shaw,* 190 App. Div. 578.) The
Surrogate erred in holding that the written declarations or
certificates of the decedent, in the absence of evidence
of delivery, were ineffective for any purpose. (*Wadd* v.
*Hazelton,* 137 N. Y. 215; *Young* v. *Young,* 80 N. Y. 422;
*Irving Bank-Columbia Trust Co.* v. *Rowe,* 213 App. Div.
281; *Ridden* v. *Thrall,* 125 N. Y. 572; *Matter of Mills,*
172 App. Div. 530; 219 N. Y. 642; *Matter of Wiemann,*
220 App. Div. 27; *Govin* v. *de Miranda,* 140 N. Y. 474;
*Miller* v. *Silverman,* 247 N. Y. 447.) The determination
of the courts below that the legal estate to these two
parcels of real property had not been effectually trans-
ferred to his son by the decedent during his lifetime is
erroneous as a matter of law. (*Canda* v. *Totten,* 157
N. Y. 281; *McKinley* v. *Hessen,* 202 N. Y. 24; *Thomas*
v. *Robert,* 123 Misc. Rep. 76; *Whitaker* v. *Westberg,* 124
Misc. Rep. 556; 215 App. Div. 785; *Hutchins* v. *Van
Vechten,* 140 N. Y. 115; *Bryant* v. *Shaw,* 190 App. Div.
578; *McGuire* v. *McGuire,* 201 App. Div. 71; *Martin* v.
*Niagara Falls P. Mfg. Co.,* 122 N. Y. 165; *Barkin
Constr. Co.* v. *Goodman,* 221 N. Y. 156; *Hall* v. *Herter
Bros.,* 83 Hun, 19; *Goss & Co.* v. *Goss,* 147 App. Div.
698; 207 N. Y. 742; *Hubbard* v. *Syenite Trap Rock Co.,*
178 App. Div. 531; *Gerard* v. *Empire Square Realty Co.,*

195 App. Div. 244; *People's Trust Co.* v. *O'Meara,* 204
App. Div. 268; *Barnes* v. *All Amer. Inv. Co.,* 120 Misc.
Rep. 706.)

CRANE, J.   J. Romaine Brown, of Yonkers, N. Y.,
died on November 5, 1924, ninety-one years of age.
Until within a few weeks of his death he was actively
engaged in the real estate business in New York city
and Westchester county, conducting it with a will and
determination, according to his own plans and ideas.
In the buying and selling of real estate, wherein his
fortune of over $3,000,000 had been made, he used methods
peculiar to himself.   He took and carried title in dummy
corporations or in the name of his clerks, and had an
aversion to the keeping of books.   His bookkeeper posted
such information as he could get from Mr. Brown, who
was rather a reticent man on his business affairs.   An
account was kept with each piece of property; cost,
expense, income, all being entered under the heading of
the piece of property to which they related.   J. Romaine
Brown had an office on Forty-third street, New York,
which was also the office, if he ever had one, for the
dummy corporations through which he did his real estate
business.   Robert J. Murphy was the bookkeeper for
Mr. Brown and his personally owned corporations.
Three corporations are mentioned as the creatures of
Mr. Brown, of which he owned all the stock and filled
all the offices, except so far as necessary to have his
representatives comply with legal forms.   These three
corporations were the Nod-A-Way Company, the Nathan
Realty Corporation and Brown Circle.   Mr. Brown also
held in his own name two pieces known as the Rockwood
street property and the MacCombs road property.

Elliott L. Brown is a son of J. Romaine Brown.   He
was in business with his father.   During the times herein
mentioned Elliott Brown was married, had two children,
and lived in Yonkers about a mile away from his father.

Although giving his entire time and attention to his father's business, he appears to have received a very meager income in proportion to his father's wealth, and to have been dependent on the good will and bounty of the old gentleman. Mr. Prime, the father's confidential lawyer and adviser, had frequently spoken to him about Elliott, urging him to give him more money — at least an income suitable for his position — and reminding the father of his good fortune in having such a worthy and dutiful boy. Whether it be that age was working mental revaluations, or the friendly suggestions revealed the injustice under which Elliott had been patiently laboring, the father in 1922, two and one-half years before his death, made up his mind to give certain property to his son. This was declared to various people, including Mr. Prime and Mr. Murphy. But his intention was not revealed solely in the spoken word. He carried out his intention as to certain stock and moneys, and also as to the Mac-Combs road property and the Rockwood street property.

Let us examine first the MacCombs road property. On June 2, 1922, this property stood in the name of J. Romaine Brown. On that date he, apparently in his own hand, signed and executed the following:

" *June* 2, 1922

" This is to certify that the property known as vacant lots Concourse & Rockwood St. deeded to Nod-A-Way Company is property of Elliott L. Brown. Any taxes or assessments to be paid by me or out of Estate. Also the improved property on MacCombs Road is to be conveyed to Nod-A-Way Co. and held by said company subject to a mortgage of $8,000 and it is to belong to Elliott L. Brown.

" (Sgd.) J. ROMAINE BROWN

" Witness

" ANNIE E. BROWN."

Annie E. Brown was the mother of Elliott.

In 1923 Mr. Brown signed and executed a further paper reading as follows:

"1923

"This is to certify that I have given to my son Elliott L. Brown all my right title and interest in that certain property known as Rockwood St. property in Block 2836 and Lots 21–22, 26 & 27 on North side of Rockwood Street and west of Grand Concourse, Borough of Bronx and any right, title or interest in old Fifth Ave. or Concourse or any interest in any adjoining streets, and I am to pay all Taxes, assessments or Tax Sales with interest after 1923. Said property stands in the name of Nod-A-Way Co., Inc., and I direct the property to be made over to him at any time he requests.

"J. ROMAINE BROWN,<br>
"President of Nod-A-Way Co., Inc.

"P. S.

"I have made this statement at many times but for fear that there may be some doubt or dispute I have put it in my own hand.

"1923 (sgd.) J. ROMAINE BROWN."

As before stated, at the time of these declarations, the MacCombs property stood in the name of J. Romaine Brown. That he intended his son to have these properties is not at all questioned. Undue influence, fraud or any other taint has never been suggested. The father knew what he was about, but like so many other people in this world, he had formed his own ideas and notions, which to others seemed peculiar. Individuality is either the mark of genius or the reverse. Mediocrity finds safety in standardization. Brown might have made a deed at once to his son. He did not do it. Both father and son had carried on business by holding real property in the name of others — individuals or corporations.

On April 3, 1924, J. Romaine Brown conveyed the property to Nod-A-Way Co.— one of the dummies — of which he was president and sole stockholder. Of course the company must have taken it, charged with the

knowledge which its president, board of directors and stockholders had, that the conveyance was subject to the trust declared by the grantor in writing in favor of his son. The corporation took it, knowing that the son owned the property and that the conveyance to it was for the purpose of holding the property for the son. These papers, written and signed by J. Romaine Brown, were found after his death in the possession of his son Elliott. Expression and facts are cramped when the person knowing the circumstances is prevented from telling them by section 347 of the Civil Practice Act. There is evidence, however, from which it may reasonably be found that these papers were delivered to Elliott at the time of execution. In the first place, J. Romaine Brown wrote them out in his own hand, one in 1922 and the other in 1923, and he did it to make known to others his intention, and to accomplish his previously declared purpose. In the paper of 1923 he said, " I have made this statement many times." Mr. Murphy and the attorney Prime state that Mr. Brown told them that he had given these pieces of real property to his son Elliott. To others he made the statement of having made gifts to his son without specifying the nature thereof. Delivery may be proved by admissions that the property belongs to another. (*Porter* v. *Gardner*, [4th Dept.] 60 Hun, 571; *Govin* v. *de Miranda*, 140 N. Y. 474; *Miller* v. *Silverman*, 247 N. Y. 447.)

After this declaration of June, 1922, the MacCombs road property was treated by father and son and by the office help as belonging to Brown, Jr. It was income-paying property, and when there was a balance over expenses, Elliott received it, and when there was a deficit, he paid it. The Nod-A-Way Co. gave no consideration for the property, and the entry on its books is " 1349–51 MacCombs Road given to Elliott L. Brown." The corporation, after the death of J. Romaine Brown, and in 1926, deeded the property to a purchaser from Elliott

Brown, the latter receiving the consideration price. The mortgages received in part payment, made to the Nod-A-Way Co., were assigned to him. The Nod-A-Way Co. has never claimed to own this property.

But while there is evidence to support the inference that these written trust declarations were delivered to Elliott, yet delivery is not necessary to constitute a valid trust. While a transfer of the property to a trustee for the purposes of the settlement may be the surest way to create a trust, yet the same result will be accomplished if the owner declare that he himself holds the property in trust for the person designated, and this trust may be created either in writing or, if relating to personal property, by parol. The declaration need not be made to the beneficiary, nor the writing given to him; in fact, his ignorance of the trust is immaterial. There must be proof of a *declaration of trust* in writing to pass real property (Real Prop. Law, § 242; Cons. Laws, ch. 50), but the declaration varies with the circumstances of each case; it may be contained in a letter (*Percy* v. *Huyck*, 252 N. Y. 168; *McKenna* v. *Meehan*, 248 N. Y. 206), or as here by formal witnessed statement. A declaration implies an announcement of an act performed, not a mere intention, and in most instances to another party. However, a writing formally creating a trust, kept by the donor without delivery to any one, under such circumstances and conditions as to show that a trust was declared, created and intended, will be given effect as such by the courts. (*Martin* v. *Funk*, 75 N. Y. 134.) " There are many cases," wrote CHURCH, Ch. J., " where the instrument creating the trust has been retained by the author of it until his death, especially when he made himself the trustee, and yet the trust sustained."

If we retain the corporate entity, as is so much insisted upon, we must maintain it to the end. J. Romaine Brown, as president of this company, director

and sole stockholder, knew when the corporation accepted the deed from J. Romaine Brown, the individual, that it was without consideration and for the purpose of passing title to Elliott; that the property belonged to Elliott and was subject to the trust declared by the two instruments above referred to, signed by J. Romaine Brown. Having taken the property under such conditions, for such use, and under the implied promise to fulfill it, the courts, or to speak technically, equity, would compel the corporation to carry it out. The Nod-A-Way Co. could not keep the property and benefit by repudiation and its own wrong. (*Foreman* v. *Foreman*, 251 N. Y. 237; *Hutchins* v. *Van Vechten*, 140 N. Y. 115; *Sinclair* v. *Purdy*, 235 N. Y. 245; *Amherst College* v. *Ritch*, 151 N. Y. 282, pp. 323–325; *Siemon* v. *Schurck*, 29 N. Y. 598; *Medical College Laboratory* v. *N. Y. University*, 76 App. Div. 48; affd., 178 N. Y. 153.)

Murphy was bookkeeper of the J. Romaine Brown Co. and also the Nod-A-Way Co. from 1922. After the death of the president of the company, other officers were elected, and he continued to handle the books. All the books were kept in the one office, as heretofore stated, in Forty-third street, New York. The entry, therefore, in the books of the Nod-A-Way Co., that these properties belonged to Elliott, is at least some evidence that the company recognized the trust or the purpose of the transaction. Murphy, the bookkeeper for all these companies, wrote up the books after the death of J. Romaine Brown from such information as he could gather. This is not surprising, however, when we recall that this was the way in which he posted the books during the lifetime of the elder Brown. These entries would be of little weight, of hardly any value as evidence in favor of Elliott Brown, having been made after he had succeeded his father as president of the company, and might possibly have been made under his direction, if it were not for the fact that the entries are consistent and in harmony with

all the other circumstances and transactions in the case. In other words, the Nod-A-Way Co. has never challenged the transaction or questioned its legality. After the intention and purpose of J. Romaine Brown had been carried out, the gift or trust is now for the first time challenged by the grandchildren of the donor.

It has been apparent to all the parties in this case, and admitted by them, that J. Romaine Brown intended Elliott to have the MacCombs road property and the Rockwood street property. They also admit that he intended to accomplish this purpose by a conveyance through the Nod-A-Way Co. It is also beyond dispute that the Nod-A-Way Co. was J. Romaine Brown and used by him as a mere dummy. He was the president and owned all the stock. The one point to which the objectors have clung in this transaction is the corporate entity of the Nod-A-Way Co. and the deed to it without reservations. The desire to reach realities and the fast falling supports of fiction have perhaps been responsible for the arguments about corporate entity and the corporate shell, and the claim that J. Romaine Brown and the Nod-A-Way Co. were one and the same thing as a fact. The discussion does not arise in this case. We may treat the Nod-A-Way Co., as we have in the above statement, as a distinct entity. Nevertheless, it has no greater rights than an individual would have. Any person taking the MacCombs road property with knowledge of the declarations of trust that the property belonged to Elliott, and that title was to be held for him, could not keep the property. The law would execute the trust if the trustee failed to do so.

Although the facts are somewhat different regarding the Rockwood street property, the underlying principles are the same. J. Romaine Brown carried this property in his own name until May 9, 1922, when he executed a deed conveying it to the Nod-A-Way Co. There is no evidence of any delivery of this deed, or that it passed

out of the possession of the grantor, if it ever did, until May 31, 1922, when it was recorded. Two days thereafter he wrote out and signed the paper, above referred to, dated June 2, 1922, wherein he declared that this Rockwood street property " is the property of Elliott L. Brown." In May, when the deed was signed and executed, the grantor intended to give the property to his son. He had so declared to friends and employees. Later he told them that he had given the property to his son. Here again he told Murphy that he was going to convey the property to the Nod-A-Way Co., the dummy, for the convenience of Elliott. In other words, this is the way father and son transacted their real estate affairs, held property and made conveyances. The knowledge of Brown as the individual and grantor was the knowledge of the corporation. What he knew regarding the transaction, it also knew. As heretofore said, he was the sole stockholder and officer, the board of directors.

What was the purpose of this deed of May, 1922? Why was it given to the Nod-A-Way Co. without consideration? This may be shown by any evidence known to the law — direct as well as circumstantial. Brown's declaration before making the deed, his declarations thereafter, as president of the company and as sole stockholder, show beyond a doubt that the conveyance to the Nod-A-Way Co. was for the benefit of Elliott Brown. While title might be in the corporation, it was to be held for Elliott Brown. Here also the books of the corporation and its subsequent actions in conveying the property to Elliott Brown's purchaser show that the corporation was faithful to its trust and carried out the declared purpose. Elliott Brown in 1926 sold this property and received from the corporation, or through the corporation, the purchase price. In the case of the MacCombs road property, the conveyance was made after the declaration of trust; in the case of the Rockwood street

property, the written declaration of intention followed a few days after the conveyance of the property. But the dates are immaterial in either case, provided the evidence shows, as it does, that the conveyance to the Nod-A-Way Co. was for the purpose of giving Elliott the property and that the company received the deed upon this trust, and for the purpose of carrying it out. As stated above, the Nod-A-Way Co., taking the property without consideration on the implied promise and understanding to execute a deed to Elliott, could not keep the property for its own benefit. Here again we are using the language of legal mechanics, as the Nod-A-Way Co. was a mere dummy or name for J. Romaine Brown. Although it had a corporate entity, it was charged with the knowledge which its officers and directors possessed pertaining to those transactions.

These questions have arisen on the accounting of Elliott L. Brown as the executor of his father's will. By that will the father tried to divide his property equally between his son and daughter. The daughter has children who, through their guardian, have filed objections to the account. The Central Trust Company, co-executor, has shared in these objections in so far as pressing the law points upon the attention of the court. The very able Surrogate of Westchester county has disposed of most of the objections, and the Appellate Division has sustained his action, with some modifications.

There have remained for our consideration on this appeal four of these objections. Two of them we have just referred to. Elliott Brown, before selling the Mac-Combs road property and the Rockwood street property, sent to his sister's lawyer a full statement of his claim to these properties through a gift from his father. He set forth at length a copy of the instruments of June 2, 1922, and the later paper signed by his father in 1923. On the accounting he claimed the moneys which he had received as the purchase price for these properties. The

titles to the real estate had passed to the purchaser; these could not be questioned; they were *bona fide* purchases for value. The proceeds, as personal property, either belonged to the Nod-A-Way Co., increasing the value of its stock, or else to Elliott L. Brown. The Appellate Division, affirming the Surrogate, held that the money must be accounted for; that it belonged to the corporation.

For the reasons which have here been stated we reach the other conclusion. The property was Elliott Brown's, and he was entitled to retain the purchase price thereof.

There are two other items in the disposition of which we agree with the Appellate Division. As for the bank stock, there was ample evidence to justify the finding that this had passed by gift to Elliott, and we find no reason for disturbing that finding.

As to the check of $17,000 marked " Special," in the stub book of the deceased, and passed by Elliott into a special account, separate and distinct from his general account in the bank, we are also satisfied that there is no mistake in the conclusion that the evidence did not justify a finding that there had been a gift to Elliott of this money.

Therefore, the order of the Appellate Division and the decree of the Surrogate's Court should be modified in so far as the decree relates to the real property in controversy, with costs to all parties payable out of the estate, and the matter remitted to the Surrogate's Court for the entry of a decree in accordance with this opinion.

POUND, LEHMAN, O'BRIEN and HUBBS, JJ., concur; KELLOGG, J., dissents and votes for affirmance; CARDOZO, Ch. J., not sitting.

Judgment accordingly.