In the Matter of the Estate of FREDERICK W. BRUNSWICK, Deceased.

Surrogate's Court, Westchester County, April 14, 1932.

*S. Joseph Oxenberg*, for the executor.

*Sperry & Yankauer* [*Walter D. Yankauer* and *Samuel Weinberg* of counsel], for legatee and creditor.

*Schneider & Groggins* [*Stanley S. Groggins* of counsel], for objecting creditor.

*Phillips & Avery* [*Royd D. Lutz* of counsel], for objecting creditor.

*Milton Dammann* [*Maurice R. Roche* of counsel], for widow, claimant.

SLATER, S. In this accounting proceeding the executor seeks the court's determination of the ownership of certain shares of stock of a corporation known as Frederic's, Inc. The widow, Anna W. Brunswick, has made a claim upon the executor to turn over to her 127 shares of stock of Frederic's, Inc., by virtue of an agreement dated December 16, 1926. The court is also asked to pass upon the claim of the widow against certain certificates of stock of the Brunswick Holding Corporation; also to pass upon the claims of one Marie Brandee, the Edmar Realty Company, Inc., and Harry W. Lichtenstein.

The decedent died February 17, 1931, by suicide. Decedent's last will was dated August 29, 1930.

The court will take up the claims in the order as above indicated.

With regard to the stock of Frederic's, Inc.: The ownership of this stock in December, 1926, was as follows: The decedent owned 127 shares and the widow owned 123 shares, making 250 shares of the issued stock of the corporation. In November, 1926, Frederic's, Inc., brought a suit in the Supreme Court in New York county against Frederick W. Brunswick, the decedent, for the sum of $111,268.37. Anna W. Brunswick, on behalf of herself and as a stockholder of Frederic's, Inc., brought an action against the decedent and others in the Supreme Court, county of Westchester, demanding judgment restraining the decedent, as an officer of Frederic's, Inc., and the Brunswick Holding Corporation, from selling, mortgaging or disposing of the real property described in the complaint, and demanding that the Brunswick Holding Corporation be required to convey certain real property to Frederic's, Inc. All the stock of the Brunswick Holding Corporation (which held title to the home at Peekskill) was owned by the decedent, Frederick W. Brunswick. On or about December 16, 1926, the two actions were settled, a stipulation by counsel was entered into, resulting in the agreement dated December 16, 1926, by and between the decedent, Frederick W. Brunswick, and Anna W. Brunswick, the wife, the owners of all the stock of Frederic's, Inc.

In the agreement, after certain " whereas " clauses, the parties recited the consideration of one dollar and other good and valuable consideration, and agreed: " *First.* For a period of ten years next ensuing the date hereof, unless sooner terminated by the mutual consent of the respective parties hereto, in the event that either of the parties to this agreement be desirous of disposing by sale or otherwise of his entire interest in the capital stock or voting trust certificates representing the same held by him or her in the corporation, Frederic's, such party does hereby agree to first offer in writing to the other party to this agreement such interest, whether it be entire or otherwise, before disposing of the same or attempting to dispose of the same to any other person, firm or corporation."

Under the second clause of the agreement, either might purchase the stocks offered, at the sum of $300 per share, and must exercise the privilege of buying within a period of ninety days.

The third clause provides that, in case of unwillingness to buy, the party offering the stock may dispose of it to other persons.

The fourth clause states: " It is further mutually understood and agreed by and between the parties hereto and as a consideration for the execution of this agreement and for the execution of the

stipulation annexed hereto, that upon the death of either party to this agreement, whether intestate or otherwise, the interest of such deceased party in the corporation Frederic's, whether such interest be evidenced by certificates of stock or by voting trust certificates, or any claim or debt due by the corporation to the said party, shall forthwith automatically, by virtue of such death, belong to and become vested in the survivor, and upon the death of such party, the said shares of stock, voting trust certificates and/or other interests are hereby assigned, transferred and set over to the survivor, provided, however, that such party has not previously thereto disposed of his or her shares of stock, voting trust certificates or interest in said corporation Frederic's in accordance with the terms previously set forth herein.

" Each of the parties covenants that in order to carry out this agreement, said party will not bequeath or otherwise dispose of such party's shares of capital stock, voting trust certificates and/or other interest in the corporation Frederic's in any testamentary document, and in the event that either party shall execute such testamentary document, that in such testamentary document said party will confirm by adequate language the obligation imposed by this agreement.

" In order to make effective this agreement, the certificates of stock owned by each of the parties hereto in the corporation Frederic's and/or the voting trust certificates representing such certificates of stock and/or any and all certificates of stock issued in substitution thereof, shall have inscribed across the face thereof the following notation: 'This certificate is not subject to sale, assignment, hypothecation or other transfer, except as set forth in an agreement between all the stockholders of Frederic's, dated the 16th day of December, 1926, copy of which has been filed with the Secretary of Frederic's.'

" *Fifth.* It is further mutually understood and agreed by and between the parties hereto that the object of this agreement is to keep the control and management of the said corporation in the hands of said parties and to prevent any stranger to this agreement from obtaining possession of any of its capital stock, except in accordance with the terms hereof."

The other paragraphs of the agreement provide that offer of sale shall be in writing, and the agreement to be binding upon the parties and their heirs and legal representatives, who are obligated to execute any and all claims and to give any further assurance necessary to make effective the covenants and obligations of such then deceased party.

This agreement was signed by the parties and was acknowledged.

Pursuant to this agreement, a voting trust agreement was executed at the same time making the two stockholders the voting trustees. A trust certificate was also executed by the two parties. A certificate of stock running to the two parties as voting trustees for 250 shares of the stock was executed by the officers of the company. The minutes of directors and of stockholders of the company were offered in evidence, showing the assenting to the execution of the papers above stated. Anna W. Brunswick, individually, and as stockholder of Frederic's, Inc., executed a general release to Frederick W. Brunswick, to the Brunswick Holding Corporation and to Frederic's, Inc., releasing all actions and all manners of action and causes of action, suits, debts, sums of money, accounts, etc. Frederic's, Inc., likewise, by general releases to Frederick W. Brunswick, released similar rights.

On October 27, 1930, a supplementary agreement was entered into between the decedent and his wife which had to do largely with the change of name of Frederic's, Inc., to the Fifth Avenue Pearl Shop, Inc. The agreement, after proper recitations, said: "That all the provisions of the agreement entered into by and between them under date of December 16, 1926, with respect to the disposition by them, or either of them, of the shares of stock owned by them respectively in the corporation known as Frederic's, shall apply with like force and effect to the new stock owned by the parties hereto in the corporation known as Frederic's, Inc., * * *."

Pursuant thereto, a new voting trust certificate was issued to Frederick W. Brunswick and Anna W. Brunswick as voting trustees.

The third paragraph of decedent's will gives to the wife, Anna W. Brunswick, "all my interest in the corporation of Frederic's, whether evidenced by stock certificates, voting trust certificates, or otherwise. This provision being intended to comply with the terms of a certain agreement made by me with the said Anna W. Brunswick under date of December 16th, 1926."

There was also offered in evidence decedent's prior will dated January 8, 1929 (not the one probated), which gave all the rest, residue and remainder of decedent's property to his wife, Anna W. Brunswick.

The creditors contend that the stock does not pass to the widow under the terms of the agreement; that the power to revoke is destructive of her right to take, and that it is testamentary in character.

The agreement involved mutual obligations and considerations. The instrument upon its face, and the evidence of the circumstances

leading up to and attending its execution and bearing upon the intention of the parties thereto, all undisputed, establish clearly that it is contractual throughout. All the circumstances which go to make up this contract are instinct with mutual obligations even though they may be imperfectly expressed. (*Ehrenworth* **v.** *Stuhmer & Co.*, 229 N. Y. 210, 219.)

"While a transfer of the property to a trustee for the purposes of the settlement may be the surest way to create a trust, yet the same result will be accomplished if the owner declare that he himself holds the property in trust for the person designated, and this trust may be created either in writing or, if relating to cate of stock running to the two parties as voting trustees for 250 personal property, by parol." (*Matter of Brown*, 252 N. Y. 366, 375.) Moreover, in thus refusing to be bound by strict legal terminology, the court, in the *Brown* case, is following a recent judicial tendency to interpret trust transactions more broadly and to effectuate wherever possible the clear intention of the settlor.

"It is not necessary to use any particular formula of words in order to create a trust of personal property, and it is not even necessary that such a trust should be evidenced by any writing. Trust relations will be implied when it appears that such was the intention of the parties and when the nature of the transaction is such as to justify or require it." (*Hoffman House* v. *Foote*, 172 N. Y. 348, 355; *Orton* v. *Tannenbaum*, 194 App. Div. 214, 222 [2d Dept.].)

The intent of the party is to be gleaned from the reading of the whole instrument. Trust relations will be implied when it appears that such were the intention of the parties. It is well settled that a person in legal possession of money or property acknowledging a trust becomes from that time a trustee, if the acknowledgment is founded upon a valuable or a meritorious consideration. Any declaration, however informal, evincing the intention with sufficient clearness, will have that effect. (*Matter of Leverich*, 135 Misc. 774, 785, 787; *Matter of Brady*, 228 App. Div. 56, 60.)

A gift must be executed by delivery, but a trust may be by declaration. The *declaration* bears the same relationship to an equitable gift that *delivery* bears to a legal gift. If the trustor retains the income for life, but directs a disposal after his death, a valid trust is created and, upon the trustor's death, the property goes to the *cestui*. If the trustor reserves the power to revoke or modify the trust so created, the trust is valid and the *cestui* takes. (42 Cornell Law Quarterly [Dec. 1931], pp. 89, 90.)

"'Professor Wigmore * * * says:* "In deciding upon this

* Wigm. Ev. (2d ed.) § 2430.

intent, the chief and most satisfactory index for the judge is found in the circumstance * * *. If it is mentioned, covered, or dealt with at all in the writing, then presumably the writing was meant to represent all of the transaction on that element." ' " (*Higgins* v. *Exchange National Bank,* 142 Misc. 69.)

Whatever uncertainty existed is clarified by *Whittemore* v. *Equitable Trust Co.* (250 N. Y. 298). The test there established is the intent of the settlor. We look to his intention, as expressed in the instrument. " The creator of a trust can do as he pleases with his property and the court looks to his words to guide them in decisions." (*Matter of Brown, supra; Hammond* v. *Chemung Canal Trust Co.,* 141 Misc. 158.)

The testator herein was indebted to his wife and to Frederic's, Inc. They were the only stockholders. He had no creditors at that time who now appear. He acknowledged the indebtedness and undertook to pay, not by the voting trust which passed nothing, but by the creation of a trust to hold his stock as trustee for the wife and, on his death, the stock to pass to the wife. That was the only way provided by the contract to pay the indebtedness. Otherwise, he would have deceived her, and lulled her to rest believing she was protected in the payment. (*Van Dyne* v. *Nelson,* 230 App. Div. 577, 579; *Wood* v. *Rabe,* 96 N. Y. 414; *Sinclair* v. *Purdy,* 235 id. 245.)

Equity will also enforce an executory agreement when there was an actual valuable consideration. (Pom. Eq. Juris. [4th ed.] § 996.) The decision in *Alleghany Col.* v. *Nat. Chatauqua Bank* (246 N. Y. 369) indicates the growth of the judicial process wherein the law enforces the reasonable expectations arising out of conduct.

There is evidence by three witnesses that the decedent had told them he had given the stock in Frederic's, Inc., to his wife, without specifying how he had given it. Here are admissions that the property belongs to another. Such declarations imply an announcement of an act performed, not a mere intention. (*Matter of Brown, supra,* 374, 375.)

The agreement permitted either to sell to a stranger. Call it a clause of revocation. Does this destroy the trust? No. The fact that a deed of trust contains a full power of revocation does not render the instrument testamentary. (*Robb* v. *Washington & Jefferson College,* 185 N. Y. 485, 493; *Ga Nun* v. *Palmer,* 216 id. 603, 608.) This was expressly decided in *Van Cott* v. *Prentice* (104 N. Y. 45).

An owner of property may create a trust, not only to transfer the property to another person as trustee, but also by declaring

himself as trustee. If the settlor reserves not only a beneficial life interest, but also a power of revocation, it would seem that such trust is not testamentary. The declaration of trust immediately creates an equitable interest in the beneficiary. (43 Harvard Law Review, 539; *Matter of Valentine*, 122 Misc. 486, FOLEY, S., citing cases.) In the *Valentine* case the surrogate sustained the acts as a valid gift and also said: "In the alternative, the proof also establishes all the elements of a valid and complete trust and the transfers may be sustained on either theory." (*Orton* v. *Tannenbaum*, 194 App. Div. 214; *Hoffman House* v. *Foote*, 172 N. Y. 348; *Brown* v. *Spohr*, 180 id. 201.)

The mere fact that a writing is to become effective only after the death of a party is not sufficient to give it a testamentary character. In the present case we have a mutual agreement based on a consideration which, by its terms, vests a present interest in the shares of stock to pass at the death of the obligor in enjoyment. (*Matter of Eisenlohr*, 258 Penn. St. 438.)

A will is an instrument by which a person makes a disposition of his property to take effect after his decease, and it is, in its own nature, ambulatory and revocable during his life. A disposition by deed or in trust may postpone the possession or enjoyment until the death of the disposing party, yet the postponement is produced by the express terms and does not result from the nature of the instrument. Upon the creation of a valid trust, it is essential that some estate be conveyed to the trustee and such estate must pass immediately. By such a trust, something of the settlor's estate has passed from him and into the trustee, even if the trustee be the donor, for the benefit of the *cestui*, and this transfer of interest is a present one, and is nowise dependent upon the settlor's death. The enjoyment of the *cestui* may be made to commence in the future. The test is the time when the instrument was designed to take effect. If it conveyed a present interest, the title vested.

The weight of authority is that the controlling factor is the intention of the person. Intention is an inferential fact to be collected from the terms of the instrument, considered in the light of surrounding circumstances.

Reserving the right during life to sell, or the power to withdraw a part or all of the principal, does not make the transaction testamentary. The fact that the fund will not be received until the donor's death is not conclusive. It is not at all determinative of the quality or legal character of the trust. It is a mere time when the trust, completely and perfectly constituted, is to be enjoyed.

I hold that the decedent created a voluntary trust for the wife in

the shares of the stock of Frederic's, Inc., owned by him, the donor becoming the trustee for the beneficiary. These shares of stock may be delivered to the wife by the executor.

The widow, Anna W. Brunswick, presented a claim against the estate for $5,057.08. The decedent formed a corporation known as the Brunswick Holding Corporation, of which he was the one stockholder. The company owned property at Peekskill, N. Y. It was the country home of the decedent. This real estate is subject to a first mortgage of $25,000, and also to a second mortgage of $17,078.37. On or about January 22, 1931, just before his death, in consideration of his widow agreeing to pay certain of his then obligations, he delivered to her a certificate of stock representing 350 shares of stock of the Brunswick Holding Corporation, as well as a bill of sale of furniture in the home as collateral security for the return to her of whatever sums she might be obliged to pay in payment of his obligations.

There was offered in evidence the agreement of January 22, 1931, signed by the decedent, wherein the widow undertook to make these payments and received as collateral security said shares of stock of the Brunswick Holding Corporation. Proof was presented that said Anna W. Brunswick paid decedent's bills to the amount of $5,057.08.

There was offered in evidence a certificate of stock of the Brunswick Holding Corporation for 350 shares running to Anna W. Brunswick, dated January 22, 1931, and signed by the decedent as president.

Such an amount is a prior lien against the 350 shares of stock of the Brunswick Holding Corporation owned by the estate.

As to the claim of Harry W. Lichtenstein: This claim is founded upon a check alleged to have been made by the decedent, dated April 1, 1927, drawn upon the Harriman National Bank, New York city, payable to the order of one Fred Perry, for $18,000. It was conceded that the check was not presented for payment until the claim was filed — after Brunswick's death — four years after the date of the alleged check.

There was testimony by one witness that the check was given by the decedent for money borrowed at the office of the Casino Nationale, a gambling club in the city of Havana, Cuba. Mr. Perry was the manager of the casino. No attempt was made to prove the claim as such for money had and received. Harry Lichtenstein testified that he had no interest in the check; that it was indorsed to his order for the purpose of collection.

" A check, strictly speaking, is a negotiable instrument, *i. e.*, a

bill of exchange drawn on a bank payable on demand (Neg. Inst. Law, § 2) and it is a misnomer to speak of a non-negotiable check." (*Irving Trust Co.* v. *Leff*, 253 N. Y. 359, 362.)

The check was never presented to the Harriman National Bank. There was not a prompt or reasonable presentation and the drawer is discharged. (*Jaysee Holding Corporation* v. *Block*, 138 Misc. 294; *Matter of Gibbons*, 139 id. 658.) The payee did not present it to the maker in his lifetime. The check is not a valid claim against the estate. (Neg. Inst. Law. §§ 131, 132, 133, 241, 321 and 322.)

With regard to the claim of one Marie Brandee upon three separate notes signed by the decedent, one for $1,350, dated January 23, 1931, payable on demand; one dated January 26, 1931, for $5,000, payable on demand; and another dated January 28, 1931, for $5,000, payable on demand: The testimony of the one witness, Walter, presented by the claimant, is to the effect that the decedent gave to the claimant the contents of an apartment in New York city. The decedent was living apart from his wife. This testimony is supplemented by a letter of the decedent dated October 27, 1930, written to the claimant, stating he had written the superintendent of the building that the claimant was the owner of the contents of the apartment, with certain exceptions. The witness further testified that the claimant gave the furniture back to the decedent, and, in return for the gift, the decedent had made the three notes. Much of the testimony of this witness was hearsay. There is evidence by the witness Guden that decedent told her on February 17, 1931, about three weeks after the date of the alleged notes, that " he had given two five thousand dollar notes to Miss Marie Brandee, that he owed her nothing and he owed nobody anything outside of the list he had given to Mr. Holley and he knew Mrs. Brunswick had done everything in her power to keep the business together and for that reason he wanted me to hear what he was saying over the phone."

It has not been shown by a fair preponderance of evidence that there was consideration for the three notes. (*Farmers Loan & Trust Co.* v. *Siefke*, 144 N. Y. 354, 359.) The *prima facie* case of the claimant, resting on sections 50 and 51 of the Negotiable Instruments Law, has been overcome and the burden recast upon the claimant has not been sustained.

A note has no valid inception until delivery by actual or constructive transfer of possession. (Neg. Inst. Law, §§ 2, 35.) On the facts herein, delivery cannot be presumed. (*Grannis* v. *Stevens*, 216 N. Y. 583, 587; *Irving Trust Co.* v. *Leff*, *supra*.) The inference of consideration to be drawn from the form of the notes has been

overcome. Acts and intention, essential elements of delivery between the parties, have not been proved. " Nothing is consideration that is not regarded as such by both parties." (*Dougherty* v. *Salt*, 227 N. Y. 200, 202.)

The claim on the three notes is disallowed.

The claim of the Edmar Realty Company was admitted by the executor in the amount of the judgment for $941.41. Its claim for rent for the period from December 1, 1930, to September 30, 1931, amounting to the sum of $3,000, is hereby allowed. Its claim for rent from October 1, 1931, to March 31, 1932 (less the amount of the rentals paid by the lessor thereof), amounting to the sum of $250, is hereby allowed. The amount of rental due from April 1, 1932, according to the terms of the lease (less the amount of the rentals made by the lessor in reduction thereof), is due from the estate to the claimant. This amount cannot be determined accurately until the termination of the lease.

Submit decree in accordance with this opinion and decision.