**BINGEN et ux. v. FIRST TRUST CO. OF ST. PAUL et al.**

No. 11260.

Circuit Court of Appeals, Eighth Circuit.

April 18, 1939.

Rehearing Denied May 9, 1939.

Before STONE, WOODROUGH, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

This is a suit in equity. The appellants, plaintiffs below, are citizens and residents of Norway. The appellees, defendants below, are executors in the state of Minnesota of the estate of Christian A. Westerbaum, deceased. The plaintiffs seek to be adjudged the owners of certain mortgage securities in the possession of the defendants. The claim arises by virtue of a purported declaration of trust executed by Christian A. Westerbaum prior to his death. Plaintiff Birger Bingen is a nephew of the deceased; plaintiff Elise Bingen is his wife. More than $3,000 is in controversy.

The plaintiffs allege in their complaint that on the 29th day of December, 1932, the said Westerbaum made a declaratory trust in writing whereby he gave to the plaintiffs certain mortgages, 17 in number, which secured a total aggregate indebtedness of $39,250; that in and by this declaration of trust Westerbaum declared that these mortgages belonged to the plaintiffs but were in his name; that he would continue to hold the legal title thereto for convenience in expediting their liquidation for the benefit of plaintiffs; and that he would liquidate the same without costs or expense. It is further alleged that Westerbaum caused this declaration of trust to be delivered to the plaintiffs through the mails shortly after January 1, 1933; and that he died in September, 1936, without making any accounting of the trust property except to remit to them the sum of $5,000 on or about February 28, 1936. The plaintiffs pray for a decree adjudging them to be the owners of the securities described in the trust instrument; that the court declare these securities to have been held in trust for them by the said Westerbaum in his lifetime; that the defendants be required to account for and deliver to the plaintiffs any of these securities now in their possession; and that plaintiffs have judgment against the defendants, as executors of the estate of said Westerbaum, for the value of the securities disposed of less a credit of $5,000 paid February 28, 1936.

Charles S. Kidder, of St. Paul, Minn. (Orr, Stark & Kidder, of St. Paul, Minn., on the brief), for appellants.

Harvey O. Sargeant, of St. Paul, Minn., for appellees.

The trial court made detailed findings of fact and conclusions of law. In a carefully written opinion the court held that the writing relied upon by plaintiffs was

ambiguous; and that viewing it in the light of Westerbaum's subsequent handling of the mortgage securities and of the letters written by him to the plaintiffs it was not a declaration of trust but merely the expression of an intention to make a gift in the future which had never been acted upon. Bingen v. First Trust Co. of St. Paul, D.C. 23 F.Supp. 958. A decree was entered in favor of the defendants and the plaintiffs appeal.

The declaration which is the subject of controversy, was written with pen and ink and is in the Norwegian language. It is undisputed that it is in Westerbaum's handwriting. The translation adopted by the trial court in its findings is as follows:

"St. Paul, Minn Dec. 29—1930

"Dear Birger

"New York City

"We have now decided to give you and wife 17 mortgages to an amount of about $39,250.00, all mortgages read in my name—but they are transferred over to you. I shall do my best to have mortgages cashed but that will probably take a longer time on account of poor times and no money amongst people. I shall hold all the papers here until later—in case something should happen that I can look after it—then I will do it without legal costs and probably without loss.

| Emry Heggie | $1200.00 | Book 634 | Page 114 |
| E. Strandlof | 2400.00 | 634 | 47 |
| H. Schattgen | 2500.00 | 145 | 127 |
| N. Hagen | 900.00 | 157 | 84 |
| Elvera Yocum | 6500.00 | 732 | 463 |
| Emry Heggie | 2000.00 | 634 | 112 |
| Elvira Yocum | 800.00 | 761 | 263 |
| J. Garrick | 2300.00 | 737 | 560 |
| Geo. Mertens | 2200.00 | 795 | 127 |
| Geo. Swandollar | 2200.00 | 18 | 393 |
| P. Kannar | 1900.00 | 634 | 156 |
| J. Berkwitz | 2200.00 | 719 | 67 |
| W. Munger | 2700.00 | 742 | 429 |
| Ern Johnson | 3000.00 | 743 | 504 |
| A. Ostrum | 2000.00 | 119 | 571 |
| Geo. Dorfner | 1450.00 | 727 | 485 |
| Art F. Slater | 3000.00 | 775 | 195 |

"[Signed.] C. A. Westerbaum"

This letter was received by plaintiff Bingen in January 1933. Since the Mertens mortgage was not executed until 1932 it appears that the letter was mis-dated and was probably written December 29, 1932. This fact, if true, is unimportant. The authenticity of the letter is unchallenged.

Christian A. Westerbaum, the donor, was born in Norway in 1857 and came to the United States in 1880. He was a jeweler by trade and was employed by Tiffany & Company in New York City for a time. He later migrated to St. Paul, Minnesota, where he became a jewelry merchant. In 1908 he retired from that business and thereafter devoted himself to handling his investments, dealing principally in real estate mortgages. He accumulated considerable property in this form and in a letter to the plaintiff Birger Bingen in 1933 Westerbaum estimated that he owned first mortgages aggregating at least $100,000 in value and that he possessed diamonds and certain other articles of jewelry.

The deceased Westerbaum had no relatives in this country. His wife died in 1933. He had no children and his two sisters and a brother remaining in Norway had predeceased him. The plaintiff Birger Bingen was a son of one of these sisters and appears to be the only relative with whom Westerbaum kept in close contact in the later years of his life. In 1909, he encouraged Bingen to come to the United States and procured work for him as a diamond cutter with Tiffany & Company in New York City. Except for an interval of a few years, Bingen remained in the United States until December, 1932, when he returned to Norway. He and his wife have since resided in that country. During all these years Westerbaum kept in close touch with his nephew, Bingen, exchanging a few letters each year and indicating a continuing deep and affectionate interest in his welfare and that of his wife.

At the time the disputed instrument was written Westerbaum was a man well over seventy years of age. He was apparently conscious of the imminence of death and of the necessity of closing up his business affairs. He appears to have been an upright and kindly person but an extremely cautious and secretive business man. It is clear that plaintiff Bingen and his wife were the natural objects of his bounty.

Westerbaum's subsequent correspondence with the plaintiff indicates that he was an aged and lonesome man somewhat disheartened by the economic trend of the times and struggling to convert his property into cash in anticipation of approaching death. He did not again refer to the above letter directly but he frequently discussed his difficulties in liquidating

mortgages in these years stating that he was making every effort to convert them into cash. It is at least open to inference that these references were explanatory of his failure to comply more speedily with the terms of the letter of December 29th. And it is entirely clear from these letters that Westerbaum intended the plaintiffs to be the beneficiaries of all his property upon his death. In one letter he stated that he would not give his property to anyone in this country. Considering all these circumstances it is not surprising that plaintiffs did not demand an accounting of their benefactor before his death.

On February 27, 1936, Westerbaum sent a draft for $5,000 together with his wife's jewelry to the plaintiffs. He mentioned the draft in the accompanying letter but did not state whether it was a gift or not and the plaintiffs contend that it represented the proceeds of two mortgages set out in the purported declaration of trust and totalling that amount which had been collected a short time before as shown by the county records.

Mr. Westerbaum died in the latter part of the year 1936. He was then about 79 years of age and had been growing steadily weaker for some months. In the last year of his life an attorney drew five wills for him. A sixth will was probated after his death. The plaintiffs were not mentioned in any of them, and at one time during this period he stated that he had no living relatives. He executed satisfactions of two of the mortgages described in the writing to plaintiffs, and assigned the sheriff's certificate on foreclosure to two other mortgages to individuals with whom he apparently had had little previous contact, all without receiving any consideration whatever. The defendants rely on this evidence of his conduct together with the fact that Mr. Westerbaum had never kept a separate account of the proceeds of the mortgages described in the letter of December 29th as establishing that the only intent to be gleaned from that letter and from his subsequent acts is an expression of a desire to make a gift to the plaintiffs sometime in the future which he later reconsidered and that there is no indication of an intent to create a trust for the plaintiffs' benefit.

■ In considering the writing of December 29th it must be borne in mind that Westerbaum was not a native of this country, that he prided himself in carrying out the details of his own affairs and that he was in fact suspicious of lawyers and did not depend upon them in his own business. It was, therefore, entirely consistent with his character that he should execute an instrument of this kind personally rather than to seek the assistance of an attorney. The instrument must be viewed in this light. In comparison with his usual discursive and rambling letters to the plaintiff—letters ranging through business advice, comments on business conditions in the United States, personal activities of the writer and his plans for the future—this was a succinctly expressed and carefully prepared instrument. It was in the nature of a formal document.

■ The general principles controlling a transaction of this character are well settled. The owner of property may constitute himself an express trustee of that property for another person. Restatement of Trusts § 17(a); Eschen v. Steers, 8 Cir., 10 F.2d 739; O'Neil v. Greenwood, 106 Mich. 572, 64 N.W. 511; Morsman v. Commissioner of Internal Revenue, 8 Cir., 90 F.2d 18, 113 A.L.R. 441. No particular form of words is necessary if the intention to create a trust satisfactorily appears and there is a reasonable certainty as to the property, the objects and the beneficiaries; the words "trust" and "trustee" need not be used. Restatement of Trusts, § 24(2); Chicago, M. & St. P. R. Co. v. Des Moines U. R. Co., 254 U.S. 196, 41 S.Ct. 81, 65 L.Ed. 219; Eschen v. Steers, supra; O'Neil v. Greenwood, supra; In re Horkan's Estate, 193 Wis. 286, 214 N.W. 438. In re Soulard's Estate, 141 Mo. 642, 43 S.W. 617. There need be no delivery of the subject matter of the trust but there must be a complete transfer of the equitable title to the property to the cestui que trust. In re Brown's Will, 252 N.Y. 366, 169 N.E. 612; Eschen v. Steers, supra; Morsman v. Commissioner of Internal Revenue, supra; Elliott v. Gordon, 10 Cir.; 70 F.2d 9. "Three things, it has been said, must concur to raise a trust,— 'sufficient words to create it, a definite subject, and a definite object; and to these requisites may be added another, viz. that the terms of the trust should be sufficiently declared.' Bisph.Eq. 65." In re Soulard's Estate, 141 Mo. 642, 43 S.W. page 622; Eschen v. Steers, supra; Snyder v. Snyder, 280 Ill. 467, 117 N.E. 465. 65 C.J. 231.

■■ Viewed in the light of these principles all the elements necessary to create a trust in the described property are contained in this writing. The instrument unequivocally announces an intention to make a gift and to effect a transfer of the ownership of the property to the plaintiffs. No other reasonable °explanation can be found for the phrase "all mortgages read in my name—but they are transferred over to you". Westerbaum was a successful business man and it can not be said that he used these words carelessly or that he did not understand or intend their full import. They indicate an accomplished purpose viz., that the ownership of the property had been changed and that it was thereafter to belong to Bingen and his wife even though Westerbaum retained the formal muniments of title for the purpose expressed in the instrument. A declaration of trust is "the act by which an individual acknowledges that property the title to which he holds in his own name in fact belongs to another, for whose use he holds it." Porter v. Woods, 138 Mo. 539, 39 S. W. 794, 797. This concept is clearly defined in the writing of December 29th. Words of similar import have been held sufficient to create a trust in property. Innis v. Michigan Trust Co., 238 Mich. 282, 213 N.W. 85; In re Brown's Will, 252 N.Y. 366, 169 N.E. 612; Rollestone v. National Bank of Commerce, 299 Mo. 57, 252 S.W. 394; In re Soulard's Estate, supra.

By this declaration Westerbaum accomplished an immediate transfer of the equitable ownership of the property to the plaintiffs. Rollestone v. National Bank of Commerce, supra; 1 Perry on Trusts, (6th Ed.) § 86. A formal assignment of the mortgage securities was not essential to the creation of the trust. In re Brown's Will, supra; Morsman v. Commissioner of Internal Revenue, 8 Cir., 90 F.2d 18, 113 A.L.R. 441. Thereafter Westerbaum held the legal title as a trustee for the purposes expressed in the instrument. Becker v. St. Louis Union Trust Co., 296 U.S. 48, 56 S.Ct. 78, 80 L.Ed. 35.

■ The instrument leaves no uncertainty as to the beneficiaries, the subject or the objects of the trust. The property included therein is described in detail. The settlor states that the legal title is retained by him in order that he may "have mortgages cashed." The plaintiffs were residents of Norway and unfamiliar with the mortgage investment business. Had they been left to rely on strangers severe losses might have resulted. It is a necessary implication that Westerbaum was empowered to do all acts essential to accomplish the conversion of the mortgage securities into money. It was not essential to the validity of the trust that his powers and duties as trustee be enumerated in detail. Orr v. Yates, 209 Ill. 222, 70 N.E. 731; 65 C.J. 273.

The defendant's contention that by this writing Westerbaum merely intended to convey information regarding a proposed gift in the future is utterly irreconcilable with the terms of the instrument. His statement that the mortgages were transferred to the plaintiffs, his agreement to liquidate them and the care with which he enumerated and described the property are all inconsistent with an expression of a vague intention to make a gift to the plaintiffs sometime in the indefinite future.

■ The defendants contend that the instrument is so ambiguous that its character can not be ascertained without the aid of extrinsic evidence and that Mr. Westerbaum's subsequent acts negative the intent to create a trust. See Ambrosius v. Ambrosius, 2 Cir., 239 F. 473; Adams v. Hagerott, 8 Cir., 34 F.2d 899. This contention can not be sustained. It is not surprising that in the circumstances Westerbaum failed to keep a separate account of these mortgages. He intended that all his property should go to the plaintiffs upon his death, and apparently the only records that he kept of his business were contained in a small note book that he carried in his pocket. Nor were his acts immediately prior to death indicative of a decision to repudiate the statements in the instrument in question. These were done near the end of life and at a time when he appears to have been of unsound mind and had forgotten that he had living relatives. In any event, it is well settled that once a trust is established the subsequent acts or declarations of the donor are not admissible in derogation of the title of the beneficiary. Elliott v. Gordon, 10 Cir., 70 F.2d 9.

■ In construing this instrument we have not lost sight of the rule that the law of the creator's domicile must control. Forbes v. Commissioner of Internal Revenue, 1 Cir., 82 F.2d 204; Liberty. Nat. Bank & Trust Co. v. New England

Investors Shares, D.C.Mass., 25 F.2d 493; 65 C.J. 334, 496. Neither party has made any particular effort to direct our attention to decisions of the Minnesota Supreme Court. However, our conclusions appear to be in harmony with the principles announced by that court in the cases cited.

The decree is reversed with instructions to enter a decree for the plaintiffs in accordance with the prayer of their petition.

Reversed.